(No. 28562.—

JOHN H. EINSWEILER *et al.*, Appellees, *vs.* FRANKLIN EARL EINSWEILER *et al.*—(FRANKLIN EARL EINSWEILER, Appellant.)·

*Opinion filed May 23, 1945.*

FRANKLIN J. STRANSKY, of Chicago, and JAMES L. COBURN, of Elizabeth, for appellant.

GERALD W. FEARER, of Oregon, and ALBERT H. MANUS, of Freeport, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

John H. Einsweiler, the plaintiff, filed in the circuit court of Jo Daviess county a complaint seeking partition of certain improved real estate located in Galena. Franklin Earl Einsweiler, a brother, was named principal defendant. The complaint alleges ownership of the property by Frank Einsweiler, father of John H. and Franklin Earl, until his death, October 10, 1942; the probate of the father's will; the appointment of plaintiff and a sister, Una W. Burrows, also a defendant, as executors, and that, under the provisions of the will, plaintiff and Franklin Earl Einsweiler became, and now are, each owners in fee simple of an undivided one-half interest in the real estate. In case partition cannot be made, a sale is sought. Franklin Earl Einsweiler filed an answer and counterclaim, which, upon motion, were stricken. Upon leave, an amended answer and amended counterclaim were filed. John H. Einsweiler and Una W. Burrows, individually and as executors of the will, and the three remaining children of Frank Einsweiler were made defendants. In the amended pleadings, after denying sole ownership by the father, the counterclaimant claimed a prior one-half undivided interest in the real estate by virtue of a copartnership between himself and his father, and alleged that the property in controversy was purchased by the father with partnership funds. Motions to strike the amended answer and amended counterclaim, which motions were filed by John H. Einsweiler, individually, and Una W. Burrows and himself as executors under the will, were sustained by the chancellor, and, defendant Franklin Earl Einsweiler having elected to abide by the amended pleadings, a decree was entered granting the relief sought by the complaint and ordering partition or sale of the real estate. Franklin Earl Einsweiler, alone, prosecutes a direct appeal to this court, a freehold being necessarily involved.

All well-pleaded averments and allegations being admitted on the motions to strike, the initial question presented for our consideration is whether a defense and a cause of action are stated by the amended pleadings. Mere conclusions of the pleader, of course, are not so admitted to be true. From the amended answer and counterclaim, each of which contains substantially similar allegations, it appears, in substance, that on April 27, 1912, the counterclaimant, Franklin Earl Einsweiler, and his father, "verbally agreed with each other to become copartners for an indefinite period of time for the purpose of conducting, carrying on and operating a foundry in the City of Galena, * * *, under the name, style and description of F. Einsweiler & Son; * * * that said business was commenced with a capital investment of $700.00, * * * obtained from moneys borrowed by said copartnership;" that this original investment was later repaid out of income of the copartnership; that the business of the copartnership continued until the death of Frank Einsweiler, for many years having been conducted in the name of "F. Einsweiler & Son," and, in later years, under the name, "Leadmine Foundry;" that each of the partners was required to, and did, perform certain prescribed duties in connection with the operation of the foundry business; that counterclaimant first worked as an apprentice, and, after learning the business, was employed in the foundry; that, thereafter, he performed services in connection with the manufacturing end of the business, and, also, attended to the sales and delivery of its products; that Frank Einsweiler, the father, solely, was assigned to the supervision of the books and accounts; that, after the business became subject to payment of income taxes, returns, in the name of the partnership, were made out, sworn to by Frank Einsweiler and filed with the Federal government; that in each return it was stated that the business and property of F. Einsweiler & Son, and of Leadmine Foundry, respectively, were

conducted by Frank Einsweiler and Franklin Earl Einsweiler, and that these income tax returns, for each and every year, contained deductions for repairs and depreciation on the buildings situated on the real estate comprising the Leadmine Foundry and for taxes imposed on the real estate. It is further alleged that there was published each year by Dun & Bradstreet, upon information furnished by the father, a statement to the effect that the Leadmine Foundry was a copartnership consisting of Frank Einsweiler and Franklin Earl Einsweiler, counterclaimant. Additional allegations are that, by virtue of the close relationship between the two and the trust and confidence reposed in the father, a confidential relationship existed between them from the inception of the partnership until the father's death; that the real estate involved in this litigation was paid for out of income of the business and title taken in the father's name; that, during the lifetime of Frank Einsweiler, thirty-seven acres of a farm, constituting part of the real estate purchased from income of the copartnership, were taken under condemnation proceedings instituted by the United States, the entire proceeds being paid to the father, despite the fact that one half of the proceeds belonged to the counterclaimant; that, prior to his death, he gave to his children, not including Franklin Earl Einsweiler, real and personal property of a value of approximately $50,000, all derived from profits of the copartnership, and that, at the time of his death, the father owned real and personal property upwards of $60,000. Franklin Earl Einsweiler further alleges that each of the copartners is entitled to one half of the profits of the business, and, therefore, to one half of the real estate purchased from income derived from the business; that title to the real estate was taken in the name of Frank Einsweiler, individually, without the knowledge and consent of himself, Franklin Earl Einsweiler; that his father paid him only sufficient sums of money for bare living expenses;

that no accounting was ever made to him of his share of the net income of the copartnership, and that he sincerely believed and expected that, in his last will and testament, or otherwise during his lifetime, his father would compensate him for his share in the earnings of the copartnership, but that his father failed so to do. Concluding allegations are that various deeds were caused to be recorded in the office of the recorder of deeds of Jo Daviess county, at Galena, for a period of more than twenty years; that he, Franklin Earl Einsweiler, never examined the deeds or records of the county, or made other inquiry to ascertain in whose name the various deeds were taken, but assumed they were taken in the name of the copartnership. An accounting is sought, and counterclaimant also seeks the aid of the court in having turned over to him, in accordance with his asserted right, as surviving partner, under sections 188 and 189, article XVI, of the Administration Act, (Ill. Rev. Stat. 1943, chap. 3, pars, 340, 341,) the real estate, personal property, moneys, notes and accounts of the copartnership, to enable him to proceed, as surviving partner, to pay the debts of the copartnership, settle its business affairs, to account to the executors of the last will and testament of Frank Einsweiler, deceased, and to pay over to them such balances, if any, as may be from time to time payable to the executors. Separate motions to strike the amended answer and amended counterclaim were filed. Attached to and made a part of these motions are two bills of sale, referred to as exhibits A and B, executed May 29, 1941, and July 25, 1942, respectively, by Frank Einsweiler. By the provisions of exhibit A, Frank Einsweiler, the father, purportedly conveyed to plaintiff a one-third interest in property known as the Leadmine Foundry, together with all tools, machinery, dies and patterns. Exhibit B purports to grant to Franklin Earl Einsweiler and John H. Einsweiler, "all the tools, machinery, fixtures and stock of raw materials and all articles

manufactured, assembled or in process of assembling contained in the warehouse on the premises, together with all the buildings of every nature and kind, including the title to the real estate occupied by said buildings now used in connection with the operation and conduct of the business known as the Leadmine Foundry * * * together with all books of account, cash on hand in the bank in the name of the Leadmine Foundry, with all choses in action and everything pertaining to the foundry business." By his will, Frank Einsweiler made bequests and devises of the identical property described in exhibit B "for the purpose of confirming the aforementioned bill of sale."

It is well settled in this State that written articles of agreement are not necessary, but that a partnership may exist under a verbal agreement, and circumstances may be sufficient to raise an inference of such an agreement. (*People* v. *Sholem,* 244 Ill. 502.) Use of a firm name is a circumstance, which, although not conclusive in itself, may be considered in determining whether a partnership exists between the parties. (*Heyman* v. *Heyman,* 210 Ill. 524; *Haug* v. *Haug,* 193 Ill. 645.) Where real estate is bought with partnership funds for partnership purposes and is applied to partnership uses, or entered and carried in the accounts of the firm as a partnership asset, it is deemed to be firm property and, in such case, it makes no difference, in a court of equity, whether the title is vested in all the partners, in one of them, or in a stranger. If the real estate is purchased with partnership funds, the party holding the legal title will be regarded as holding it subject to a resulting trust in favor of the firm furnishing the money. (*Miller* v. *Ousley,* 334 Ill. 183; *Robinson Bank* v. *Miller,* 153 Ill. 244; *Crone* v. *Crone,* 180 Ill. 599.) From the well-pleaded allegations of fact, already recounted, admitted to be true upon the motions to strike, the amended pleadings sufficiently charge the existence of a copartnership between Frank Einsweiler, the father, and

counterclaimant, for a continuous and uninterrupted period from April, 1912, until the death of Frank Einsweiler, and that the real estate in controversy was purchased by the father with the use of funds representing income from the copartnership.

The remaining contention requiring consideration is the claim that Franklin Earl Einsweiler was guilty of *laches,* in failing, during the period from 1912 until the death of Frank Einsweiler, to assert any claim with respect to the real estate in controversy or to any share of the income and profits of the copartnership. To sustain this theory, it is argued that from the face of the pleadings it sufficiently appears that title to the real estate was vested in the decedent, Frank Einsweiler, at the time of his death; that he dealt with all of the property as his sole and individual, and not as partnership, property, and that, prior to his father's death, no claim or demand was ever made by Franklin Earl Einsweiler to any interest in the property. There is no fixed rule as to what constitutes *laches,* determination as to its existence being governed by the facts and circumstances of each case. (*Cross* v. *Janes,* 327 Ill. 538.) The general rule, subject to few exceptions, is that an action for a partnership accounting cannot be brought until the partnership has been dissolved. (47 Corpus Juris, Partnership, sec. 836, p. 1155; *Horne* v. *Ingraham,* 125 Ill. 198.) So long as a partnership continues, failure to demand a partnership accounting does not amount to *laches.* (47 Corpus Juris, sec. 918, p. 1210; *Harris* v. *Hillegass,* 54 Cal. 463; *Wiley* v. *Wiley,* 115 Md. 646; *Davis* v. *Bucknell,* 244 Mass. 352.) In *Hawkes* v. *First National Bank of Greenfield,* 264 Mass. 538, 163 N. E. 246, it was held that a partner's failure, during forty-six years of the existence of a partnership, to inquire about the record title to properties purchased by his copartner with partnership funds, or to examine records with respect thereto, did not amount to *laches* so as to bar assertion of the partnership

right within a reasonable time after discovery of the fact. Again, a copartnership having been admitted on the motions to strike, it necessarily follows that a fiduciary relationship existed between the partners, requiring any partner who assumes control and management of the business and affairs of the business, while so controlling it, to manage it for all, and in the interest of all, the partners. His duty would not, perhaps, be strictly that of a trustee, but would be analogous to it, and he would not be allowed to derive personal advantage from the use of the partnership assets or business or good will of the firm. This rule is universal in its application to fiduciary relations. *Grossberg* v. *Haffenberg*, 367 Ill. 284; *Raymond* v. *Vaughn*, 128 Ill. 256.

Here, it is specifically alleged in the amended pleadings that Frank Einsweiler, the father, "at no time prior to his death ever denied that this defendant [Franklin Earl Einsweiler] was entitled to an undivided one-half interest in said real estate and personal property connected with said copartnership, * * *, or as to his right to be compensated by an accounting for his share in the net profits * * *, or did any other act which would indicate that he in any way disputed the rights of this defendant in said property." Conversely, it is pertinently alleged, as a fact, that Frank Einsweiler, the father, recognized the existence of a partnership, (1) by rendering income tax returns, in its behalf, in which deductions were made for depreciation and taxes on the real estate in controversy, and (2) by supplying information to Dun & Bradstreet indicating that a partnership existed between the two. If these allegations of fact can be proved, it would follow that no dissolution of the partnership occurred prior to the death of Frank Einsweiler, the father, and it could not be said, as a matter of law, that Franklin Earl Einsweiler was guilty of *laches* in not demanding an accounting prior to his father's death.

For the reasons stated, the decree of the circuit court of Jo Daviess county is reversed and the cause is remanded, with directions to overrule the motions to strike the amended answer and amended counterclaim, and to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*