(No. 33131.—

CATHERINE MIGLORE RIZZO *et al.,* Appellees, *vs.* MICHAEL RIZZO *et al.,* Appellants.

*Opinion filed May 24, 1954—Rehearing denied July 13, 1954.*

ANTHONY W. ROSINIA, of Chicago, (ARTHUR A. LEVISOHN, and WILLIAM J. CORRIGAN, of counsel,) for appellants.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, and JOSEPH M. TAUSSIG, both of Chicago, (JOHN M. O'CONNOR, JR., of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendants have appealed directly from a decree of the circuit court of Cook County, entered substantially in accordance with the master's findings and recommendations, and ordering defendants Michael, Joseph and John Rizzo, as surviving partners of Rocco Rizzo Sons & Co., to render an accounting to Catherine Miglore Rizzo, (herein called plaintiff,) administratrix of the estate of Rocco Rizzo, Jr., a deceased partner, and directing defendants Mary and James Rosinia to convey a one-fourth interest in certain real estate to each of the defendants Rose Cambiglio, Angelina Raio, and Theresa Schiavone, together with an accounting of the profits from the premises since May 1, 1939.

The essential issues in this cause are whether the evidence establishes that a partnership existed at the date of the death of Rocco Rizzo, Jr., between him and his brothers, defendants Michael, John and Joseph Rizzo; whether *laches* barred plaintiff's claim predicated on such alleged partnership; and whether defendants Mary and James Rosinia held the residential property under a constructive trust for the benefit of the daughters of Rocco Rizzo, Sr.

From the evidence adduced before the master, it appears that in 1910, Rocco Rizzo, Sr., an Italian immigrant, who could neither read nor write English, operated a waste paper business at 612 West Taylor Street, Chicago, Illinois, under the name of Rocco Rizzo & Co. He also owned a building at 1109-1111 South Racine Avenue, in which he and his eight children lived.

Michael, the oldest son, went to work for his father in 1910, Joseph went to work in 1913, Rocco, Jr., in 1916, and John in 1920. Each son performed definite duties for the business: Michael, the most experienced, was the genral manager; Joseph was the receiving clerk; and John and Rocco, Jr., were truck drivers. None of them received wages, but were given room and board, and all the

profits, if any, were divided equally. However, in 1915, Rocco, Sr., retired from active participation. Michael, then age 21, urged his father to stay at home since their mother was dead.

On October 29, 1929, the father deeded the business property at 612 West Taylor Street, to Michael, who paid no consideration for either the business or the building, but merely handed the deed to his father to sign with his mark. Additional property adjoining these premises was subsequently acquired, and title was taken in the name of Frank Rosinia. There is evidence that the property was paid for with funds furnished by Michael, his brothers, and by the business which was the only source of income of the brothers.

The evidence is controverted as to whether the business relationship between the brothers constituted a partnership. Michael, Joseph and John all denied that they were partners prior to 1944, but admitted that they all worked in the business, shared equally in the profits, and went without pay if there were no profits. On cross-examination, Michael admitted that after his father retired from the business in 1915, as the oldest son he was operating head and ran the business for his brothers who entered it as they became old enough; that it was the boys' business, and they all worked together, one for all and all for one to make a living from it.

It was admitted that the name of the business was originally Rocco Rizzo & Co.; that it became Rocco Rizzo Son & Co. when Michael went to work; and sometime thereafter it was changed to Rocco Rizzo Sons & Co. Michael denied that this latter change occurred during the lifetime of Rocco Rizzo, Jr., but the firm was listed in the telephone directories for 1920, 1927, 1929, 1930, 1931, and 1932 as Rocco Rizzo Sons & Co., and there was some evidence that this title appeared on the truck during the years prior to the death of Rocco Rizzo, Jr.

The sister, Rose Cambiglio, testified that her brother, Rocco, Jr., was a partner. There was a conflict in the testimony of persons who had business dealings with the firm as to whether the brothers were partners. An employee of 30 years admitted on cross-examination that it was his understanding that Rocco, Jr., was one of the bosses, and that all the Rizzo brothers were owners of the company; another witness stated that Rocco, Jr., had referred to Michael as "the boss"; and other witnesses testified that Michael alone was "the boss."

Rocco Rizzo, Jr., died intestate June 27, 1931, leaving surviving his widow and two minor sons. Plaintiff testified that after her husband's funeral, Michael assured her that she would get her husband's share out of the business as she always had, that she and her children would be taken care of, and agreed to pay her $15 a week, which sum was paid for 11 months. Michael, however, denied the conversation, but admitted making the payments. Plaintiff also testified that Michael Rizzo told her in 1933 that business was bad, but as soon as it picked up she would get her husband's share. In that conversation plaintiff also asked Michael about the $800 that she and her husband had given him when he was short, and asked that she be given at least a few dollars a week on account since she earned only $12 a week, and couldn't get along. She claims that Michael said, "Have you got anything to show for it in black and white?" Michael, however, denies any such conversation, and stated that he walked away when he saw plaintiff coming, and avoided her after her husband's death.

Plaintiff testified further to another meeting around 1937 with James Rosinia and Michael Rizzo, during which they told her and her brother, who was also present, that they knew she had tried to bring suit and had stopped her lawyer. They again assured her that when business picked

up she would get the share to which she was entitled. Defendants denied this conversation.

In 1938 plaintiff's son Robert, then age 16, went to work for the Rizzo brothers at a salary of $9 a week, and continued for about four years. In about 1940 plaintiff claims that she had another conversation with Michael Rizzo, in which she demanded some money and pointed out that the other partners and their wives were receiving money. He refused to give her any funds, and told her that if she did not like the way he talked she knew what she could do.

Plaintiff's sister, Margaret Priore, and her daughter, testified to a conversation with the late Judge Michael Rosinia, who at that time was a lawyer and represented the Rizzo brothers, in which he said that Michael Rizzo wanted to turn the business over to Catherine's sons because he and the other brothers had no sons who cared for the business. He also admitted that plaintiff had been treated badly in the past. Thereafter, plaintiff, her son Robert, and her sister met in Michael Rosinia's office, and according to plaintiff's testimony Michael Rosinia repeated that the Rizzo brothers were going to turn the business over to Catherine's boys, providing Robert went to school, and learned the business from the bottom up. Michael Rosinia explained that before the war business was bad, but now it was a $50,000 a year business.

Plaintiff's son Robert did work for the business again from 1944 until 1949, and was paid the union scale of $52.50 per week.

Plaintiff further testified to another conversation in 1947 with James Rosinia, in which she was told that neither she nor her children would get anything from the business. She then said that she would go out and borrow money to "put them in court," to which James Rosinia replied that he had that all "fixed up." · James Rosinia,

however, admitted only that he saw plaintiff at this time and told her that he did not know anything about the Rizzo business. He cut the conversation short because he did not want to become involved.

With reference to the rights of the parties in the residential property at 1109-1111 South Racine Street, the evidence reveals that on July 11, 1930, Rocco, Sr., conveyed the property by deed, without consideration, to Michael Rizzo. There was no conversation at that time as to the purpose of the conveyance, but defendant Michael Rizzo did admit on cross-examination that everyone knew the building was for the girls. Both plaintiff and the sister Rose Cambiglio, testified that on several occasions Rocco, Sr., in the presence of his family, stated that the business should go to the boys, and the apartment building to the girls.

Defendant James Rosinia, husband of Mary, testified that in 1932 Rocco, Sr., told him that Michael no longer wanted to take care of the property, and, therefore, it was conveyed, without any consideration, to Michael's sister Mary Rosinia. The father continued to reside in the building and collect the rents. On February 18, 1942, Mary conveyed the property to her son, Anthony Rosinia, who, the same day, conveyed it back to Mary and James Rosinia as joint tenants.

On the basis of substantially the foregoing evidence the master found that Michael, Joseph, John, and Rocco, Jr., operated the business as a partnership from 1920 to June 27, 1931, the date of the death of Rocco, Jr.; that his estate was entitled to a one-fourth interest in the partnership as of the date of his death, and, at the option of the representative, either to interest at the legal rate on said one-fourth share or to the profits attributable to the use of his interest in the partnership from the date of his death to the date of the decree; and that plaintiff is entitled to an accounting from defendants Michael, Joseph, and John

Rizzo of all partnership dealings from the time of the commencement to the date of the decree.

It was recommended that orders be entered to effectuate those findings, and that it be ordered that Mary and James Rosinia convey an undivided one-fourth interest in the 1109 South Racine Avenue property to each of the sisters, defendants Angelina Raio, Theresa Schiavone, and Rose Cambiglio, together with an accounting of all rents and profits from May 1, 1939, to the date of the decree.

The court entered a decree substantially in accordance with the findings and recommendations of the master.

In determining the propriety of that decree on this direct appeal, it is evident that the findings of the master, while *prima facie* correct, are of an advisory nature only, (*Zilvitis* v. *Szczudlo,* 409 Ill. 252, 255;) however, where those findings are approved by the chancellor, it has been held that they will not be disturbed unless manifestly against the weight of the evidence. *Freymark* v. *Handke,* 415 Ill. 360, 365.

In the instant case the decree of the court in plaintiff's favor is predicated upon the existence of a partnership relation between plaintiff's deceased husband and his brothers. The requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. (*Parish* v. *Bainum,* 306 Ill. 618, 623; Ill. Rev. Stat. 1949, chap. 106½, par. 6.) It has been held that, as between the parties, the existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances. (*Goacher* v. *Bates,* 280 Ill. 373.) Written articles of agreement are not necessary, for a partnership may exist under a verbal agreement, and circumstances may be sufficient to establish such an agreement. (*Einsweiler* v. *Einsweiler,* 390 Ill. 286, 291; *Haug* v. *Haug,* 193 Ill. 645, 647.) Such factors as the mode in which

the parties have dealt with each other; the mode in which each has, with the knowledge of the others, dealt with other people, (*Van Buskirk* v. *Van Buskirk*, 148 Ill. 9;) and the use of a firm name, (*Einsweiler* v. *Einsweiler*, 390 Ill. 286,) have been deemed material in determining the existence of a partnership. The essential test, however, is the sharing of the profits, (*Parish* v. *Bainum*, 306 Ill. 618,) but it is not necessary that there be a sharing of the losses in order to constitute a partnership. (*Clemens* v. *Crane*, 234 Ill. 215; *Carter* v. *Wright*, 275 Ill. App. 224, 230; *Fougner* v. *First Nat. Bank*, 141 Ill. 124.) Mere participation in the profits, however, does not of itself create a partnership. *Schumann-Heink* v. *Folsom*, 328 Ill. 321.

Defendants rely upon the *Schumann-Heink case* in support of their position that the sharing of the profits herein did not establish that the brothers were partners. In that case the issue was whether the certificate holders could be held liable as partners under a trust declaration, and it was held that since the trustees had full control of the management of the trust and the certificate holders were not associated in carrying on the business, they could not be deemed partners merely because they shared the profits. In the instant case, however, it is uncontroverted that each of the alleged partners worked in the business which bore a firm name that included them all. Hence, the reference in the *Schumann-Heink case* is in no way determinative herein.

Defendants contend that the evidence establishes that Michael Rizzo was the sole proprietor of the business on the date of the death of plaintiff's decedent. In support thereof, defendants point out that the business was turned over to Michael in 1915 when his father retired, that the profits were merely the measure of compensation for the brothers, that Michael was regarded as the boss by persons dealing with the firm, and that a formal partnership contract had to be drawn up at the request of the bank in

order to negotiate a loan in 1937, indicating that there was no partnership prior thereto.

The fact that Michael, as the oldest son, had more authority in the management than the other brothers does not of itself preclude the existence of a partnership, particularly in view of the custom in such closely-knit immigrant families. In fact, Michael stated that the business was turned over to him because he was the oldest son. Furthermore, it is an accepted partnership practice that one partner may be charged with greater managerial responsibilities.

The fact that the brothers admitted that they all worked in the business, sharing equally in the profits and going without pay if there were none, tends to comply with the essential requirement for a partnership. That interpretation is enhanced by the admission of Michael on cross-examination that he was carrying on the business for all the brothers; by the testimony of the sister Rose Cambiglio, that Rocco, Jr., was a partner; and by the statement of an employee of 30 years that all the brothers were regarded as the owners.

Furthermore, the fact that the firm name, originally Rocco Rizzo & Co. had been changed to Rocco Rizzo Son & Co. when Michael entered the business, and was again changed to Rocco Rizzo Sons & Co., and was so listed in the telephone book and on the truck during the lifetime of Rocco, Jr., is further evidence of the existence of a partnership between the brothers as of 1931. Changes in the firm name to Jacob Sholem & Sons were deemed significant in establishing the existence of a partnership in *People* v. *Sholem*, 244 Ill. 502, where the sons also went to work in the family business.

Under the circumstances in the case at bar, therefore, there is ample evidence that the brothers, Michael, Joseph, John, and Rocco, Jr., were carrying on the business for their common benefit, each contributing his services and having an equal interest in the profits; hence, the finding

of the master, as approved by the chancellor, that the brothers were partners as of the date of the death of Rocco, Jr., could in no way be deemed to be manifestly against the weight of the evidence.

Under a partnership, a fiduciary relation is created whereby the partner assuming control of the business is obliged to manage it in the interest of all the partners. (*Einsweiler* v. *Einsweiler*, 390 Ill. 286; *Grossberg* v. *Haffenberg*, 367 Ill. 284.) In *Ridgely* v. *Central Pipe Line Co.* 409 Ill. 46, it was held that where two brothers were in partnership in the operation of land conveyed to one of them, his subsequent refusal to divide the land or to share the income constituted an abuse of trust and confidence sufficient to raise a constructive trust.

In the instant case, Michael Rizzo was under a duty as a partner, and as the oldest brother on whom the other children relied, not to take advantage of his fiduciary position. The business property, originally at 612 West Taylor Street was conveyed to him by his father in 1929. No consideration was paid for the deed, nor did the deed recite that it was given in consideration of love and affection; nor was there a disclosure to the partners or the grantor that the deed would give Michael alone ownership of the property to the exclusion of the other partners, for Michael merely gave the deed to his father to sign with his mark. Under those circumstances, even though the deed was absolute on its face, it is clear from the understanding of the parties, and from the nature of Michael Rizzo's fiduciary obligation, that this property should be deemed to be held for the benefit of the firm, and was properly found to be partnership property.

With reference to the subsequently acquired business property at 618 West Taylor Street, although title was taken in the name of Frank Rosinia, there is evidence from the testimony of Michael and John Rizzo that it was purchased for the business and paid for, in the main, with

funds from the firm, and from contributions of all the brothers, whose only source of income was the partnership business. That factor was stressed in *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9, in determining whether property purchased by one of the partners constituted a partnership asset. Therefore, the chancellor's determination that Frank Rosinia was merely a nominee, and that this property belonged to the business, could not be deemed to be contrary to the manifest weight of the evidence or the law.

Defendants have argued that plaintiff's failure to institute proceedings earlier constituted *laches* and barred whatever rights she might have had to her deceased husband's share of the partnership. The cases reiterate that there are no fixed rules to determine what constitutes *laches,* for that concept depends upon whether, under the facts and circumstances in each case, the plaintiff is chargeable with want of due diligence in failing to institute .proceedings earlier. (*Einsweiler* v. *Einsweiler,* 390 Ill. 286; *Freymark* v. *Handke,* 415 Ill. 360; *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9.) In *Freymark* v. *Handke* the court stated, at page 366: "It has been defined to be such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of equity."

As hereinbefore noted, plaintiff was paid some $15 a week for the first year after her husband's death, pursuant to the alleged promise of defendant Michael Rizzo to pay her husband's share to her. Thereafter, business grew worse, and all payments were discontinued. The evidence respecting the number and content of plaintiff's conversations with Michael Rizzo is controverted, but it is clear that there were periodic promises made by Michael, by James Rosinia, Michael's brother-in-law, and by the late Michael Rosinia, attorney for the Rizzos, to pay plaintiff when business got better. It was not until plaintiff's con-

versation with James Rosinia in 1948 that plaintiff realized that even though business had improved nothing would ever be done for her or her sons. There is also evidence that defendants interceded in some manner and prevented her first attorney from bringing suit in 1938.

Those facts must be considered together with the circumstances that plaintiff's son was given a job by the Rizzos in 1938 and worked for them until 1942, and again from 1944 to 1949; that there were suggestions and promises made during that time that plaintiff's sons would take over the business eventually, since Michael had no children and the only other son of the brothers was not interested in the business; that it was contrary to all *mores* of the family to press legal rights against each other, particularly against the oldest son who exercised authority and enjoyed the trust and confidence of all the members of the family.

Undoubtedly it is more difficult at this time to establish what the nature of the business relationship between the brothers was at the death of Rocco, Jr., but there is no showing that defendants have been prejudiced by the delay, or have changed their position in reliance upon plaintiff's conduct. Moreover, it is defendants who are largely responsible for the delay by their own conduct. Consequently, in the light of all the foregoing circumstances, the finding of the master, as approved by the chancellor, that defendants failed to sustain their defense of *laches,* is fully supported by the evidence.

Defendants object further to the determination of the chancellor that the residence property on Racine Avenue was imposed with a constructive trust in favor of all the daughters of Rocco Rizzo, Sr., on the ground that it is not within the terms of plaintiff's alternative prayer for relief, or warranted from the evidence.

To establish a constructive trust where there is a fiduciary relationship between the parties, as in the case at bar, it is necessary that there also be some evidence of undue

influence, as defendants contend. (*Peters* v. *Meyers,* 408 Ill. 253.) However, the presumption of fraud or undue influence arises from the confidential relationship where the dominant party has enjoyed a benefit by virtue of his fiduciary status, and the burden is upon that party who has so benefited to rebut the presumption by clear and convincing proof that he has exercised good faith and has not betrayed the confidence reposed in him. (*Jones* v. *Washington,* 412 Ill. 436, 441; *Bremer* v. *Bremer,* 411 Ill. 454; *Stahl* v. *Stahl,* 214 Ill. 131.) Factors significant in determining whether a particular transaction between parties standing in a fiduciary relation is fair include a showing that the fiduciary has made a frank disclosure of all relevant information which he had, that the consideration was adequate, and that the other party had competent and independent advice before completing the transaction. *Jones* v. *Washington,* 412 Ill. 436.

In the instant case, Michael Rizzo, who enjoyed the trust and confidence of his father and brothers and sisters, paid no consideration for the deed to the residential property from his father, who could neither read nor write English; nor did the deed recite that it was given for love and affection; nor did the father or the other children have any competent and independent advice before the deed was executed to Michael in 1930. Moreover, after the deed was executed, the father and daughters continued as before to occupy the premises, with the rents still going to the father. Both plaintiff and defendant Rose Cambiglio testified that the father had stated many times that the residential property was for the girls and the business belonged to the boys. Even defendant Michael Rizzo admitted on cross-examination that the residence was for the girls, and defendant Theresa Schiavone testified that the deed to the residence was given to Michael to "take charge." Furthermore, inasmuch as the father had no property other than the house and the business, it is un-

reasonable to assume that he intended to give both premises to one son to the exclusion of all his children with whom he lived on good terms.

Under these circumstances, it is evident that the conveyance, while absolute on its face, was intended to give Michael only the legal title, to be held for the benefit of his sisters. Any attempt by him to assert absolute right to the premises must be deemed to be in violation of his fiduciary obligations, and would warrant the imposition of a constructive trust. Nor was this situation modified by his subsequent transfer of the property to his sister Mary. She knew of her father's intention, and also paid no consideration for the property. The testimony that she accepted the conveyance because Michael no longer wanted the responsibility, and that she made expenditures to maintain the premises, would not constitute grounds for giving her absolute ownership of the premises. She would merely be entitled to an allowance for such expenditures under a proper accounting.

The instant case is closely analogous in this respect to *Stahl* v. *Stahl,* 214 Ill. 131, where a parent conveyed without consideration to a son in whom trust was reposed, and the son conveyed to a brother, also without consideration. The court therein held that the property was impressed with a constructive trust for the benefit of the other children, and stated: "It is apparent but for the confidence reposed in Frank A. by his mother and brothers and sisters the title to said premises would not have been conveyed to him. After the title was thus obtained by him, to permit him to hold said premises free from the claims of his brothers and sisters is so opposed to equity and good conscience that a court of equity, in order to administer complete justice between the parties, will raise a trust, by construction, in favor of the brothers and sisters and against Frank A. in said property, and require him, and his grantee with notice, to execute the same." The court further stated

that it would closely scrutinize transactions between parties occupying fiduciary relations toward each other, and that Frank A. Stahl, who had the burden of establishing the fairness of the transaction, failed to explain why his mother conveyed to him all her property without consideration, why his brothers and sisters assented to such transfer, and why he, without consideration, transferred said property to his brother, John, if he was the absolute owner thereof.

Similarly, in the instant case, neither defendant Michael Rizzo, who occupied a fiduciary relation to his father and sisters, nor his transferee, sustained the burden of proving that they were properly entitled to· the absolute and exclusive ownership of the residence to the exclusion of the other children. Hence, the findings of the master and the chancellor that the property was held subject to a constructive trust is in accordance with the evidence and the law.

Defendants contend that the decree grants relief beyond the prayer of plaintiff's alternative complaint. Plaintiff sought therein to impose a constructive trust on both the business and residential property for the benefit of all the heirs, but the chancellor found that only the residential property was subjected to such a trust, and then only for the benefit of certain heirs who were defendants in the cause. This argument is not well taken inasmuch as section 34 of the Civil Practice Act (Ill. Rev. Stat. 1949, chap. 110, par. 158,) provides that the prayer for relief shall not be deemed to limit the relief obtainable, and section 50 of that act provides that the court may determine the ultimate rights of the parties on each side as between themselves. A finding that all of the property was not held in trust for all the heirs of Rocco Rizzo, Sr., did not preclude a finding that some of the property was held in trust for some of the heirs; consequently, defendants could be neither surprised nor prejudiced by the relief allowed.

In the light of our analysis of this cause, the findings of the chancellor are amply supported by the evidence, and the decree entered pursuant thereto is in accordance with the law and should properly be affirmed.

*Decree affirmed.*