2024 IL App (2d) 230425-U
No. 2-23-0425
Order filed June 3, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| BOULDER HILL CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CH-117 |
| CHRISTOPHER COPE, | ) ) | Honorable Stephen L. Krentz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

*Held*:  Defendant sufficiently alleged that plaintiff breached its fiduciary duty thereby precluding summary judgment.

¶ 1    In this interlocutory appeal under Illinois Supreme Court Rule 307(a)(4) (eff. Nov. 1, 2017), defendant, Christopher Cope, appeals the trial court's order granting partial summary judgment in favor of plaintiff, Boulder Hill Condominium Association. We vacate and remand.

¶ 2                                     I. BACKGROUND

¶ 3    Plaintiff is "an Illinois condominium association" that is primarily located in Montgomery. Defendant owns one of the units falling under the Association's purview. On March

27, 2019, the Association filed its three-count complaint against defendant, seeking: (1) a mandatory injunction requiring defendant to effectuate a sale of his unit; (2) a declaratory judgment stating that defendant violated the Illinois Condominium Property Act (Act) (765 ILCS 605/1 *et seq*. (West 2018)), making him liable for reasonable attorney fees and court costs; and (3) a finding that defendant tortiously interfered with plaintiff's agreement to sell the units.

¶ 4        By way of background, the complaint generally alleged that, on April 19, 2017, plaintiff sent to all unit owners a notice of a May 4, 2017, meeting to ascertain whether the owners wished to accept an offer to sell all of the Association's units for a sum of $1,591,800. On May 4, 2017, plaintiff conducted the meeting, at which more than 75% of the condominium owners voted in favor of selling the property. Plaintiff's attorneys began preparing and collecting the requisite closing documents from each of its owners, but defendant failed to return the completed documents to plaintiff's counsel. Instead, upon the plaintiff's "information and belief," defendant "contacted multiple other members of the Association," advising them not to return any closing documents to plaintiff. Since then, defendant has shown "an unwillingness to execute the documents necessary to effectuate the sale of [his] Unit, as required by the Act."

¶ 5        On February 6, 2020, plaintiff filed its first motion for summary judgment, arguing that defendant was in violation of the Act by failing to execute the relevant closing documents associated with his unit. On June 3, 2020, defendant was given leave to file his response to the motion. In his response, defendant argued that Ruben Ybarra, who was on the Association's board as an agent of Boulder Hill Apartments, LLC, the majority owner of the association's units, was attempting to "force a sale of all of the condominium units from the current unit owners back to the Association at a sales price unilaterally chosen by the Association/Ruben, to then do with the units as the Association/Ruben pleases." Pertinently, defendant also argued that summary

judgment was not appropriate because he disputed many of the material facts outlined in plaintiff's complaint—such as whether he in fact had failed to turn over any executed closing documents—and because plaintiff's allegations in the complaint were "largely conclusory in nature" and relied on an outdated version of the Act to defendant's detriment. On August 4, 2020, the trial court denied plaintiff's motion for summary judgment, finding that there were "material questions of fact that preclude[d] summary judgment."

¶ 6       After numerous continuances, on November 21, 2022, defendant filed a motion for leave to file his affirmative defenses and counterclaim. As his affirmative defenses, defendant sought to argue that Ruben utilized the plaintiff corporation as an alter ego to: (1) breach a fiduciary duty he owed to each member of the association by drafting and promoting a sales contract that benefited himself and his wife, Yolanda, to the detriment of the association; and (2) initiate the instant case with unclean hands. In short, defendant wished to argue that the proposed bulk purchaser of the units, Boulder Hill Apartments, LLC, was owned by YRY Holdings, LLC, which in turn was solely managed by Yolanda Ybarra, Ruben Ybarra's wife.[1] Given this relationship, defendant concluded that Ruben was a "*de facto* owner" of YRY Holdings, LLC, and that he was attempting to induce a sale of the units solely to benefit his family's corporation to the detriment of the unit

---

[1] Specifically, defendant alleges that "[t]he only member of Boulder Hill Apartments, LLC is YRY Holdings, LLC," and the "manager of YRY Holdings, LLC is Yolonda Ybarra." According to defendant, "[t]he members of YRY Holdings, LLC are the Yolanda Rosemarie Ybarra Living Trust, the Ybarra Children's Trust, and the Ruben Ybarra Jr. Insurance Trust." Either Ruben or his wife, Yolanda, "are the trustees of those trusts." We note that plaintiff concedes that Yolanda "has a limited ownership interest" in Boulder Hill Apartments, LLC.

owners. In his proposed affirmative defenses, defendant also referenced an Association meeting that purportedly took place in March 2017 "for the purpose of voting on whether to accept the *** purchase proposal." According to defendant, "formal voting was tabled [on that date] because Ruben determined that there was an insufficient number of votes in favor of the proposal."

¶ 7       On February 17, 2023, plaintiff responded to the motion for leave. In the response, plaintiff argued that, as a corporation, it could not hold any fiduciary duties towards defendant. On May 10, 2023, the court entered an order granting defendant leave to file his affirmative defenses and a counterclaim. On May 11, 2023, defendant filed his aforementioned affirmative defenses, as well as counterclaims for breach of fiduciary duty and constructive fraud.

¶ 8       On June 13, 2024, plaintiff filed its motion for partial summary judgment. Plaintiff reiterated that defendant failed to dispute that 75% of the Association's unit owners voted to approve the sale, and that, as a result of this approval, defendant's refusal to turn over any closing documents to effectuate the sale was unlawful. Plaintiff also argued that defendant's refusal to execute the closing documents was not a result of any legitimate concerns he had concerning the sale, but rather, was driven from spite, as plaintiff was currently engaged in a lawsuit against defendant's father, Jay Cope. As a result, plaintiff requested a "mandatory injunction *** requiring [d]efendant to execute the [c]losing [d]ocuments within three days of entry of judgment," as well as a second injunction "granting the Association a limited power of attorney for purposes of executing the [c]losing [d]ocuments on [d]efendant's behalf in the event that [d]efendant fails to do so within three days of entry of judgment." Last, plaintiff requested that the matter be continued thereafter "for purposes of filing a petition for attorneys' fees."

¶ 9       On June 14, 2023, plaintiff answered defendant's affirmative defenses.

¶ 10      On August 3, 2023, defendant responded to the partial motion for summary judgment,

asserting that material questions of fact remained concerning the unpaid balance of his mortgage that precluded summary judgment. Defendant further argued that plaintiff breached several fiduciary duties owed to defendant, which meant that plaintiff was not entitled to complete the sale of the units as a matter of law.

¶ 11    On October 5, 2023, the trial court granted plaintiff's motion for partial summary judgment. As a threshold matter, the trial court first noted in the order that, pursuant to the Act, plaintiff received the requisite number of approval votes from its unit owners in order to lawfully effectuate the sale. Next, the court analyzed defendant's arguments concerning any questions of his mortgage, finding the contentions moot, as plaintiff had specified during oral argument that it would satisfy defendant's mortgage with the sale proceeds.

¶ 12    Thereafter, the court acknowledged that, pursuant to *Kai v. Board of Directors of Spring Hill Condominium Ass'n*, 2020 IL App (2d) 190642, an association's breach of fiduciary duties to its individual property owners "can constitute a sufficient basis to prevent a [bulk] sale." However, the court rejected defendant's various arguments concerning plaintiff's breaches of fiduciary duty. Defendant had first argued that plaintiff breached its fiduciary duties when prematurely adjourning the March 2017 meeting once it became clear that the sale contract would not be approved by the requisite number of votes. However, the court noted that defendant failed to show that plaintiff had a duty to continue with the meeting after it became clear that the requisite number of affirming votes would not be cast.

¶ 13    Defendant had also argued that plaintiff "breached a duty by drafting a contract favorable to the anticipated bulk sale purchaser, Boulder Hill, LLC." However, in contrast to defendant's allegations, the court found that "the anticipated purchaser drafted the agreement, not *** [p]laintiff, and that contract was merely presented to the [unit] owners for approval or rejection."

Nonetheless, while defendant argued that the price of the contract was unfavorable to unit owners, section 15 of the Act provided "a means and a method to challenge the proposed purchase price," in which unit owners could complete an appraisal process to prevent the sale of a unit below market price. Because defendant had not completed this process, there was no evidence suggesting that the purchase price offered in the contract was unfavorable to defendant. While defendant further argued that "[p]laintiff's appraisal methodology was unfavorable to [d]efendant," defendant's refusal to obtain an appraisal resulted in a lack of "counter-evidence" in the record "to demonstrate [p]laintiff's methodology was unfair or prejudicial." Therefore, the court found no issue of material fact concerning the sale contract's price or plaintiff's appraisal methodology.

¶ 14    The court next disagreed with defendant's argument that "[p]laintiff breached a fiduciary duty simply by asking [d]efendant to authorize [p]laintiff to obtain a mortgage payoff letter on [d]efendant's behalf as part of the *** [s]ale." To this end, the court noted that defendant had not actually alleged "any impropriety on [plaintiff's] part or any corresponding detriment to [d]efendant." In sum, the court ruled that, "[i]n the absence of a demonstrated detrimental impact," it would not "presume [p]laintiff breached a duty that hasn't been shown to exist in the first place."

¶ 15    Defendant had also asserted that plaintiff breached a fiduciary duty by demanding "[d]efendant sign a proposed warranty deed in lieu of a quit-claim deed." The court found this argument forfeited, however, as defendant did not support his contentions by citing to pertinent authority. Moreover, the court found the argument to be moot, as "[p]laintiff's counsel[] recently affirmed acquiescence at oral argument that [p]laintiff now intends to ask only for a quit-claim deed."

¶ 16    Lastly, the court discussed defendant's various arguments that, given the "family relationships and essentially non-arm's lengths connections" between the Association and the

presumptive purchaser, "the transaction [was] presumptively fraudulent." Although the court agreed with the "black letter law" providing that "a presumption of fraud arises when a fiduciary benefits from a transaction involving the principal and that a fiduciary is prohibited from seeking a selfish benefit because of the relationship," it found no breach worthy of preventing the bulk sale, as defendant failed to allege "any detriment other than his dissatisfaction with the outcome of the vote to compel the sale of his property." The court thus granted plaintiff's motion for partial summary judgment. Defendant timely appeals.

¶ 17                                II. ANALYSIS

¶ 18     On appeal, defendant contends that the trial court erred in finding that plaintiff was entitled to partial summary judgment as a matter of law, where the record shows that plaintiff breached several fiduciary duties purportedly owed to defendant in several ways, by: (1) adjourning a certain March 2017 meeting before voting on the proposed sale had been completed; (2) negotiating the terms of the sale contract despite a "conflict of interest;" (3) and "insisting on negotiating for a short sale" for defendant's unit, "rather than paying the existing mortgage in full." Additionally, defendant argues that the court erred in finding that its arguments concerning his outstanding mortgage and the quit claim deed were moot. We address these arguments in turn.[2]

_____

[2] Defendant also makes two separate arguments that are not specifically identified above. First, defendant confusingly argues that "[t]he mere fact that Ruben Ybarra is not technically an owner of the Ybarra Entities, [*sic*] does not absolve him or the Association of their fiduciary duties owed to [defendant]," despite the fact that the trial court never found otherwise. In fact, while referencing *Kai*, the trial court implicitly agreed with defendant that the Association, including Ybarra, *did* owe defendant a fiduciary duty. Indeed, plaintiff concedes as much on appeal.

¶ 19    "Summary judgment 'shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Peregrine Financial Group, Inc. v. TradeMaven, L.L.C.,* 391 Ill. App. 3d 309, 312 (2009) (quoting 735 ILCS 5/2-1005(c) (West 2006)). "In deciding a summary judgment motion, the court must construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent." *Id.* "A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* "Appellate review of an order granting partial summary judgment is *de novo*." *Id.*

¶ 20                                A. March 2017 Meeting

¶ 21    First, we examine defendant's argument that plaintiff breached its fiduciary duties when it adjourned the March 2017 meeting prematurely. Pursuant to section 15 of the Act:

---

Accordingly, because no dispute exists as to this point, we do not address it. While defendant, in his reply brief, additionally argues that Boulder Hill Apartments, LLC, the party seeking to purchase the units, also held fiduciary duties towards defendant, this argument is forfeited as it was not raised in defendant's opening brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1., 2020). In either event, Boulder Hill Apartments, LLC, is not a party to this case.

Defendant also generally argues that the trial court erred in "its application of the presumption of fraud," without referencing any one specific finding that the court reached. For the sake of clarity, we shall address this argument not in isolation, but as it relates to defendant's specific fiduciary duty claims.

"(a) Unless a greater percentage is provided for in the declaration or bylaws, * * * not less than 75% where the property contains 4 or more units may, by affirmative vote at a meeting of unit owners duly called for such purpose, elect to sell the property. Such action shall be binding upon all unit owners, and it shall thereupon become the duty of every unit owner to execute and deliver such instruments and to perform all acts as in manner and form may be necessary to effect such sale, provided, however, that any unit owner who did not vote in favor of such action and who has filed written objection thereto with the manager or board of managers within 20 days after the date of the meeting at which such sale was approved shall be entitled to receive from the proceeds of such sale an amount equivalent to the greater of: (i) the value of his or her interest, as determined by a fair appraisal, less the amount of any unpaid assessments or charges due and owing from such unit owner or (ii) the outstanding balance of any bona fide debt secured by the objecting unit owner's interest which was incurred by such unit owner in connection with the acquisition or refinance of the unit owner's interest, less the amount of any unpaid assessments or charges due and owing from such unit owner. The objecting unit owner is also entitled to receive from the proceeds of a sale under this Section reimbursement for reasonable relocation costs * * *.

(b) If there is a disagreement as to the value of the interest of a unit owner who did not vote in favor of the sale of the property, that unit owner shall have a right to designate an expert in appraisal or property valuation to represent him, in which case, the prospective purchaser of the property shall designate an expert in appraisal or property valuation to represent him, and both of these experts shall mutually designate a third expert in appraisal or property valuation. The 3 experts shall constitute a panel to determine by

vote of at least 2 of the members of the panel, the value of that unit owner's interest in the property." 765 ILCS 605/15 (West 2018).

In short, "[u]nder section 15 of the Act, if a sufficient majority of the unit owners in an association votes in favor of a bulk sale of all of the units, the majority may force such a sale." *Kai*, 2020 IL App (2d) 190642, ¶ 6. Any minority owners are entitled to the value of their interests in the property, with the caveat that they must sell their units as provided in the bulk sale contract. *Id.*

¶ 22    Furthermore, we have found that condominium associations owe fiduciary duties to their unit owners, and that those duties "appl[y] to the bulk sale of condominiums under section 15." *Id.* ¶ 19. "Thus, each board member here has strict duties to treat the unit owners 'with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat [them] as well as [he] would treat himself.' " *Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233, ¶ 36 (quoting *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992)). Where an association breaches its fiduciary duties in promulgating a section 15 sale, the sale may be set aside. See *Kai*, 2020 IL App (2d) 190642, ¶ 35 ("Recission [of a section 15 sale] is merely one of a number of equitable remedies that might be available when a fiduciary duty is breached").

¶ 23    Relying on *Kai*, defendant argues that plaintiff breached its fiduciary duty when it adjourned the March 2017 meeting prematurely. Specifically, according to defendant:

> "In *Kai* ***, the Appellate Court noted that the meeting to vote on the Section 15 sale was controlled by the Defendant Board Members, and that the meeting [there] 'was adjourned immediately after being called to order, when the Defendant Board Members realized that the sale did not have the support of 75% of the unit owners.' " (citing *Kai*, 2020 IL App (2d) 190642, ¶ 9).

Thus, defendant reasons, because the court deciding *Kai* ultimately found that the trial court there had erred in dismissing the plaintiffs' claim of a breach of fiduciary duty, the court here similarly erred in ruling that defendant failed to show a breach of its fiduciary duties when adjourning the March 2017 meeting. We disagree.

¶ 24    It is true that the defendants comprising the condominium association in *Kai* did prematurely adjourn one meeting concerning the proposed sale. There, we found:

> "The July 9 meetings [pertaining to the proposed bulk sale], which were controlled by the Defendant Board Members, were cursory. For example, the meeting for building 1 was adjourned immediately after being called to order, when the Defendant Board Members realized that the sale did not have the support of 75% of the unit owners. The board refused to allow any discussion of the proposed sale, hold an actual vote, or allow a non-MSH board member to videotape the meeting." *Kai*, 2020 IL App (2d) 190642, ¶ 9.

However, we did *not* state that the defendants breached a fiduciary duty solely by adjourning the meeting early. In fact, we made no mention of the meeting when ruling that the trial court erred in dismissing the plaintiffs' claims of a breach of fiduciary duty:

> "Here, the complaint alleged more than mere self-interested behavior. The plaintiffs alleged that the dual interests of the Defendant Board Members in both the majority unit owner *** and the buyer *** created a conflict of interest and led them to breach their fiduciary duties toward other unit owners. The complaint further alleged that the defendants used their control of the Defendant Boards to effectuate bulk sales to a buyer that they also controlled, on terms that disadvantaged the plaintiffs in favor of the defendants. We have no difficulty in concluding that, if proven, these allegations could amount to a breach of the defendants' fiduciary duties." *Id.* ¶ 26.

Accordingly, despite defendant's contentions to the contrary, *Kai* does not stand for the proposition that a condominium association has a duty to complete a vote as to a section 15 bulk sale, even where it has become obvious that such a proposal will not pass. Instead, *Kai* stands for the much more general proposition that associations have "strict duties to treat the unit owners 'with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat [them] as well as [an association member] would treat himself,' " and that those duties apply to the promulgation of any section 15 sales. *Id.* ¶ 25 (quoting *Boucher*, 2018 IL App (1st) 162233, ¶ 36). Thus, it is not enough for defendant here to simply point to *Kai* and assert that here, as in that case, plaintiff adjourned the section 15 meeting before collecting every vote. Instead, to properly argue that plaintiff breached a fiduciary duty by adjourning the meeting, defendant needed to show how prematurely ending the meeting resulted in the type of unfairness or lack of candor prohibited by *Kai*. *Id.*

¶ 25    Defendant has not carried that burden. In his briefs, defendant asserts that, because plaintiff adjourned the meeting early, Ruben allowed himself time to negotiate with other unit owners to help pass the bulk sale. However, defendant offers no convincing explanation as to how it was improper or unfair for Ruben to have subsequently negotiated with the unit owners. For this reason, defendant has shown no unfairness resulting from the adjournment of the March 2017 meeting so as to support his claim that plaintiff breached its fiduciary duties when it ended the meeting early.

¶ 26    Defendant also argues that adjourning the meeting early unfairly deprived the unit owners an opportunity to "ask questions and discuss options" concerning the sale. However, defendant overlooks the fact that the unit owners *did* have such an opportunity at the subsequent section 15 meeting, in which the vote ultimately passed. Defendant finally asserts that, had plaintiff held the full March 2017 vote, the prospective buyer would have been put on notice that the terms of the sale were unattractive to the Association, leading it to raise the sale price as a response. This highly

speculative argument makes little sense. Regardless of the duration of the March 2017 meeting, it was clear that the measure to approve the sale did not pass muster. Thus, regardless of when the meeting ended, the prospective buyer's motivation to raise the sale price, by defendant's logic, remained the same. For all of these reasons, defendant has shown no unfairness or prejudice resulting from plaintiff's early adjournment of the March 2017 meeting. Accordingly, the trial court did not err when it found that defendant failed to show that the association breached a fiduciary duty by adjourning the March 2017 meeting early.

¶ 27                                B. Creating the Sales Contract

¶ 28    Next, we consider defendant's arguments that the trial court improperly granted plaintiff's motion for partial summary judgment because a question remained as to whether plaintiff's breach of fiduciary duty precluded the sale. "To state a claim for breach of fiduciary, a [party] must allege the existence of a fiduciary duty, the breach of that duty, and damages proximately caused therefrom." *Duffy v. Orlan Brook Condominium Owners Ass'n*, 2012 IL App (1st) 113577, ¶ 17. Once more, condominium associations and the board members owe fiduciary duties to their individual unit owners. *Id.* ¶ 18. "Therefore, the condominium association and its board members are required to 'act in a manner reasonably related to the exercise of that duty and the failure to do so results in liability for the board and its individual members.' " *Id.*

¶ 29    Our supreme court has found that, where the principal in a fiduciary relationship benefits from that relationship, a presumption of undue influence arises, "since the dominant party had enjoyed a benefit due to his fiduciary status." *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452 (1983) (citing *Rizzo v. Rizzo*, 3 Ill. 2d 291 (1954)). In such a situation, "the beneficiary must produce clear and convincing evidence in order to rebut that presumption." *Id.*

¶ 30 Here, defendant argues that, by negotiating the terms of the sale agreement, determining its price terms, and preparing the agreement, all despite the "conflict of interest of Ruben controlling both the buyer and the seller," plaintiff breached its fiduciary duties. Specifically, citing *Kai*, defendant suggests that Ruben, both through the Association and Yolanda's company, created a contract that was "inherently fraudulent" because its terms "were the product of self-dealing." Pointing to testimony in which Ruben seemingly admits to having "come up with a purchase price," defendant essentially argues that Ruben prepared a sales contract that benefitted the purchaser—thereby benefiting his wife and himself—to the detriment of the unit owners, thus creating a presumption of fraud that plaintiff failed to rebut.

¶ 31 Plaintiff, on the other hand, argues that no presumption of fraud exists with respect to the section 15 sale, because Ruben and the purchaser—Boulder Hill Apartments, LLC—are separate entities. To this point, plaintiff argues that it is not even a party to the "transaction between [d]efendant and Boulder Hill Apartments, LLC." Plaintiff further argues that there can be no presumption of fraud here because "the record is completely devoid of any evidence that [Ruben] was in a position of 'undue influence' with respect to [d]efendant." Similarly, plaintiff argues that "[t]he record is devoid" of any evidence that Ruben benefitted from the proposed section 15 sale, further precluding the presumption that the sale was fraudulent. Finally, plaintiff argues that, even if a presumption of fraud did arise, the Association has rebutted it, as defendant had the ability to vote against the sale, submit a written objection, and retain counsel to guide him through the sale process. Moreover, plaintiff argues that it never hid from defendant Ruben's status as an agent of Boulder Hill Apartments, LLC, exemplifying how plaintiff had at all times been transparent with defendant.

¶ 32    Here, because defendant sufficiently alleged that plaintiff breached its fiduciary duties, plaintiff needed to show that the transaction was fair in order to rebut defendant's claims. *Id.* However, because plaintiff did not make such a demonstration after the trial court effectively flipped this burden, it failed to show that it was entitled to summary judgment as a matter of law. Thus, the trial court erred when granting summary judgment in plaintiff's favor.

¶ 33    In his response to plaintiff's motion for partial summary judgment, defendant argued that Boulder Hills Apartments, LLC, purchased a majority of the Association's units before appointing Ruben as its agent to serve on the Association as majority unit owner. From there, while representing both the Association as majority unit owner *and the proposed purchaser*, Ruben found himself on both sides of the proposed section 15 sale. Plaintiff admits that Ruben did "assist with establishing a sales price for the Sales Contract." Defendant, citing Ruben's deposition, presented evidence that some units had sold in 2017 for a much higher price than reflected in Ruben's price determination. From these record facts, defendant outlined a scenario in which the purchaser—which, again, was owned by Yolanda and had appointed Ruben onto the plaintiff board—could maximize their profits by paying the unit owners an unfairly low price. While plaintiff argues that Ruben merely came up with the sales price as "an agent of Boulder Hill Apartments, LLC," and "not in his capacity as Association Board President," a fiduciary cannot simply change hats in order to engage in self-dealing while preserving his fiduciary duties. Simply put, this is the exact type of behavior we cautioned against in *Kai*:

> "When there is no self-dealing involved, the majority owners and minority owners will have the same interest—maximizing the price they will receive for their units—and majority owners can be expected to refuse to agree to any price that is significantly lower than the fair value of their units. In these circumstances, the market functions as it should

to set the appropriate price, and the buyer must be given a voice to protect its interests in that process. *When the majority owners and the buyer both seek a lower sale price, however, the market is distorted. And when the minority owners cannot refuse to sell (as ordinarily the case in a bulk sale under section 15), that distortion can result in substantial unfairness. In these circumstances, the availability of a cause of action for breach of fiduciary duty is especially important.*" (Emphasis added.) 2020 IL App (2d) 190642, ¶ 22. Thus, having cited to the record to allege that the Association—through Ruben—engaged in self-dealing, it became plaintiff's burden to rebut the presumption of unfairness. *Franciscan Sisters*, 95 Ill. 2d at 464. However, the trial court effectively reversed this burden, finding that defendant needed to obtain an appraisal in order to show that the proposed sale price was unfair. This was error, and we therefore vacate the trial court's grant of partial summary judgment.

¶ 34    Plaintiff's argument that it cannot have breached a fiduciary duty because it and the purchaser are separate entities is specious. Although the record does not show that Ruben had any individual ownership interest in YRY Holdings, LLC, or Boulder Hill Apartments, LLC, it is beyond dispute that his wife, Yolanda, does have an ownership interest in these entities. Plainly then, any transaction that benefitted Yolanda would also benefit Ruben's family unit. See *In re Estate of Burren*, 2013 IL App (1st) 120996, ¶ 21 (fiduciary received benefit when agent listed fiduciary's children as beneficiaries in will).

¶ 35    We also reject plaintiff's arguments that it could not have breached any fiduciary duty because it did not hold a position of undue influence over defendant. Plaintiff reasons that its actions cannot constitute a breach of its fiduciary duties unless it is otherwise shown that plaintiff exerted "undue influence" over defendant. However, plaintiff is mistaken. A "presumption of fraud or *undue influence* arises from the confidential relationship where the dominant party has enjoyed

a benefit by virtue of his fiduciary status, and the burden is upon the party who has so benefited to rebut the presumption by clear and convincing proof that he has exercised good faith." *Rizzo*, 3 Ill. 2d at 305. Accordingly, once defendant cited record evidence to allege that plaintiff had engaged in self-dealing, it was not defendant's burden to show undue influence, but plaintiff's burden to disprove it. Plaintiff did not provide any convincing evidence to dispute defendant's argument. Because it was plaintiff's burden to show that it had acted honestly and fairly and it did not do so, defendant's allegations stood uncontroverted, meaning that plaintiff had failed to show that it was entitled to summary judgment as a matter of law.

¶ 36    Nonetheless, plaintiff argues that it rebutted any presumption of fraud so as to be entitled to partial summary judgment. We disagree. "Once the petitioner has shown that a fiduciary relationship exists, the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent." *Lemp v. Hauptmann*, 170 Ill. App. 3d 753, 757 (1988). "The dominant party then has the burden of proving by clear and convincing evidence that the transaction was fair and equitable, and did not result from his undue influence over the servient party." *Id.*

> "Factors significant in determining whether a particular transaction between parties standing in a fiduciary relation is fair include a showing that the fiduciary has made a frank disclosure of all relevant information which he had, that the consideration was adequate, and that the other party had competent and independent advice before completing the transaction." *Rizzo*, 3 Ill. 2d at 305.

¶ 37    According to plaintiff, it overcame any presumption of fraud because:

> "Defendant voted 'no' on the sale, submitted a written objection, retained counsel to guide him through the Section 15 Sale process, and to this day refuses to convey his unit.

Moreover, [d]efendant was aware of the fact that [Ruben] was an agent of Boulder Hill

Apartments, LLC[,] from the very onset of [Ruben's] presence at the Association."

Essentially, plaintiff takes the risible position that defendant's actions in hampering the section 15 sale evinces the sale's fairness. Indeed, by plaintiff's backwards logic, hiring an attorney to bring a claim of a breach of a fiduciary duty would actually serve as evidence of the fiduciary's loyalty. Furthermore, even if defendant were aware of Ruben's involvement with both the Association and Boulder Hill Apartments, LLC, this knowledge in and of itself would not establish that the sale was fair if defendant did not consent to Ruben's dual role. See *In re Estate of Halas*, 209 Ill. App. 3d 333, 344 (1991) (a fiduciary can lawfully occupy "conflicting positions" where the agent knowingly consents). Accordingly, plaintiff has not rebutted the presumption of fraud arising from the sale, meaning it did not show that it was entitled to summary judgment as a matter of law. For this reason, the trial court wrongfully granted partial summary judgment in plaintiff's favor.

¶ 38                                C. Mortgage and Deed

¶ 39     Finally, because defendant's arguments concerning his mortgage and deed are considered under a similar analysis, we address both arguments together.

"[A]n appellant has the burden to present a sufficiently complete record of the proceedings

at trial to support a claim of error, and in the absence of such a record on appeal, it will be

presumed that the order entered by the trial court was in conformity with law and had a

sufficient factual basis. Any doubts which may arise from the incompleteness of the record

will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 40     Here, defendant argues that the trial court erred when it found his arguments concerning his unpaid mortgage balance and the execution of a quitclaim deed to be moot. However, while defendant notes that the trial court reached these decisions due to certain statements that plaintiff

made during oral arguments, he has not provided us with any transcripts of the arguments. Accordingly, because the record is lacking, we presume the court followed the facts and law. *Id.*[3]

¶ 41                                    III. CONCLUSION

¶ 42     For the foregoing reasons, we vacate the trial court's grant of partial summary judgment, and remand for further proceedings consistent with this decision.,

¶ 43     Vacated and remanded.

---

[3] Defendant also argues that, by forcing him to negotiate for a short sale instead of paying his mortgage in full, plaintiff has once again breached a fiduciary duty owed to defendant. However, again, by failing to provide us with a complete record, we presume the trial court did not err in finding the issue to be moot.