In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-2667

HIGHWAY J CITIZENS GROUP
and WAUKESHA COUNTY
ENVIRONMENTAL ACTION LEAGUE,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF
TRANSPORTATION, MARIA CINO,[1] Acting
Secretary of Transportation, FEDERAL
HIGHWAY ADMINISTRATION, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 212—**Lynn Adelman**, *Judge*.

_____

ARGUED FEBRUARY 14, 2006—DECIDED AUGUST 2, 2006

_____

Before BAUER, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.*   In 2005, the Highway J Citizens
Group ("Citizens") and the Waukesha County Environmen-

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we
have substituted the current acting United States Secretary of
Transportation, Maria Cino, for her predecessor, Norman Mineta,
as the named respondent.

tal Action League ("WEAL") brought this action against the United States Department of Transportation ("DOT"), the Secretary of Transportation in his official capacity, the Federal Highway Administration ("FHWA"), Mary Peters in her official capacity as the Administrator of FHWA, the United States Army Corps of Engineers ("Corps"), Michael Pfenning in his official capacity as District Engineer for the Corps, and Frank Busalacchi in his official capacity as Secretary of the State of Wisconsin Department of Transportation ("WisDOT"). The plaintiffs alleged that federal approval of a project to expand an eighteen-mile segment of the former County Highway J/Wisconsin State Highway 164 violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq.; the Clean Water Act ("CWA"), 33 U.S.C. § 1344; the Federal-Aid Highway Act ("FAHA"), 23 U.S.C. § 101 et seq.; and the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq. The district court denied the plaintiffs' motion for a preliminary injunction; it held that the plaintiffs had not demonstrated a reasonable likelihood of success on the merits of their claims because those claims likely were barred by claim preclusion. The plaintiffs now appeal. They contend that the doctrine of res judicata is not applicable to the present case because the claims that they seek to litigate here are factually and legally distinct from those that they litigated previously. Because we believe that the district court correctly held that this action is barred by res judicata, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

There are two construction projects at issue in this litigation; both are "major Federal actions"[2] as defined by federal environmental regulations.[3] The first, the County

---

[2] The National Environmental Policy Act ("NEPA") requires that a recommendation for any "major Federal action[] significantly affecting the quality of the human environment" include a "detailed" Environmental Impact Statement ("EIS") describing:

> (i) the environmental impact of the proposed action,
>
> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
>
> (iii) alternatives to the proposed action,
>
> (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
>
> (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(C); *see also* 40 C.F.R. § 1502.14 (further defining what an EIS must contain). Federal-Aid Highway Act ("FAHA") regulations impose similar requirements. *See* 23 C.F.R. § 771.123 (setting forth applicable procedures and requiring that the "draft EIS . . . evaluate all reasonable alternatives to the action[,] [] discuss the reasons why other alternatives, which may have been considered, were eliminated from detailed study [and] . . . summarize the studies, reviews, consultations, and coordination required by environmental laws or Executive Orders to the extent appropriate at this stage in the environmental process").

[3] *See* 40 C.F.R. § 1508.18 (defining a "[m]ajor Federal action" as

(continued...)

J/Highway 164 Project (Project # 2748-01-01), involves the expansion of an eighteen-mile segment of Wisconsin State Highway 164[4] from two to four lanes. In 1999, these eighteen miles, which run through Waukesha and Washington Counties in Wisconsin, were experiencing substantial traffic congestion, delays and related safety issues. The Wisconsin Department of Transportation ("WisDOT") commissioned a study of proposals to increase the highway's capacity. The WisDOT, in conjunction with the Federal Highway Administration ("FHWA") and as required by federal law, subsequently drafted an Environmental Impact Statement ("EIS") that recommended widening the highway. *See* R.19, Ex.5. The proposed expansion converts approximately 100 acres of land for highway use and, according to the plaintiffs, raises significant environmental concerns with regard to the destruction of wetlands.[5]

---

(...continued)

an action "with effects that may be major and which are potentially subject to Federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (§ 1508.27). Actions include the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts or administrative tribunals under the Administrative Procedure Act or other applicable law as agency action").

[4] When initially constructed in the 1970s, this highway was designated "County Highway J." However, in 1986, the relevant section of the highway was transferred to the WisDOT and was redesignated "Highway 164." We therefore refer to the road as "Highway 164" and to the project as the "Highway 164 Project" throughout this opinion.

[5] Highway 164 is located within the Upper Fox portion of the Illinois-Fox River watershed; this area is considered a "Priority
(continued...)

The EIS for the project was made available to the public on April 9, 2001, and a public hearing was held on May 30, 2001. On December 11, 2001, the FHWA and WisDOT issued a revised EIS; this document addresses alternative proposals raised during the hearing, but concludes in favor of expanding the highway. The DOT and FHWA issued a Record of Decision ("ROD")[6] on March 6, 2002, marking their final approval of the recommendations contained in the revised EIS. Construction by WisDOT, using federal funds appropriated under FAHA, now has commenced on this project. Phase I was completed in late 2004; on January 14, 2005, the Army Corps granted a permit under § 404 of the CWA to the WisDOT to fill 9.27 acres of wetlands, thus allowing the WisDOT to commence Phase II of the project.

The second project, Project # 2748-01-00, is known as the "Ackerville Bridge/Lovers Lane Reconstruction Project" ("Ackerville Bridge Project"). It primarily involves the construction of two overpass structures on Highway 164 in Washington County, near the northern end of the highway expansion project. One overpass will cross railroad tracks, thus eliminating the need for existing at-grade crossings; the

---

[5] (...continued)
Watershed" by the Wisconsin Department of Natural Resources. *See* R.10, Ex.A.

[6] FAHA and NEPA regulations require the FHWA and DOT, respectively, to certify their final approval of a major federal action by issuing a Record of Decision ("ROD"). The ROD must "present the basis for the [agency's] decision" and "summarize any mitigation measures that will be incorporated in the project." 23 C.F.R. § 771.127(a); *see also* 40 C.F.R. § 1505.2(b) (requiring the relevant agency to identify the alternatives considered and the considerations balanced in reaching a final decision).

second overpass will facilitate passage over State Highway 175. Like the Highway 164 expansion project, the new overpass structures are designed to ease the flow of traffic.

The Ackerville Bridge Project commenced with the FHWA and WisDOT's preparation of an Environmental Assessment ("EA").[7] After a public hearing was held in March 2000, the FHWA issued a "Finding of No Significant Impact"; the FHWA concluded that the construction of the overpasses would not affect significantly the quality of the human environment. Construction on this project began in May 2002.

---

[7] NEPA regulations provide that, when the significance of the environmental impact of a transportation project proposal is uncertain, an Environmental Assessment ("EA") should be prepared to assist in making this determination. The EA should:

> (1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

> (2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.

> (3) Facilitate preparation of a statement when one is necessary.

40 C.F.R. § 1508.9(a). The EA also must "include brief discussions of the need for the proposal, . . . of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted." *Id.* § 1508.9(b). If a finding of no impact is made, no further action is required. If, however, the agency makes a preliminary finding that the project may result in significant environment impacts, it must commence immediately the preparation of an EIS.

**B.  The *Citizens I* Litigation**

Highway J Citizens Group ("Citizens") is an unincorporated association representing citizens of Waukesha and Washington Counties in Wisconsin "who are concerned about the potential destruction of the region along [Highway] 164 and [County Highway] J." R.1 at 6. According to the complaint in this case, Citizens' mission includes "maintaining Highway 164 as a two-lane scenic road[,] [] maintaining the environmental resources and preserving the remaining rural character of the area." *Id.*

In July 2003, Citizens filed suit in the United States District Court for the Eastern District of Wisconsin against the Secretary of Transportation in his official capacity; Frederick Wright in his official capacity as Executive Director of the FHWA; and Thomas E. Carlsen in his official capacity as Acting Secretary of the WisDOT. Citizens alleged that the defendants' approval of the Highway 164 and Ackerville Bridge projects violated the APA, 5 U.S.C. §§ 701-06; NEPA, 42 U.S.C. § 4321 et seq.; regulations implementing NEPA; and the Wisconsin Environmental Policy Act ("WEPA"), Wis. Stat. § 1.11, Wis. Admin. Code Transp. § 400 et seq. Citizens first claimed that drilling for the Ackerville Bridge Project risked disturbing an underground "contamination plume" containing arsenic and trichlorethylene, which was migrating towards the site of construction. *Highway J Citizens Group v. Mineta*, 349 F.3d 938, 942 (7th Cir. 2003) ("Citizens I"). Citizens requested that the court enjoin the continued construction of the Ackerville bridges, as well as require the defendants to fill current holes with concrete. They also asked the court to mandate that the defendants conduct another environmental impact study; they claimed that the EA for the Ackerville Bridge Project failed to examine the implications of the contamination plume. Second, Citizens contended that the

FHWA and WisDOT had failed to consider reasonable alternatives to the building of the Ackerville bridges. Lastly, Citizens claimed that the defendants had improperly segmented[8] the Ackerville Bridge Project from the Highway 164 Project. *See Citizens I* Complaint, Supp. App. at 192 (arguing that the two actions constitute "one project or, if not, the Lovers Lane Road/Ackerville Project is an interdependent part of the larger action and depends on the larger action for its justification"). According to Citizens, both the EIS for the Highway 164 Project and the EA and Finding of No Significant Impact for the Ackerville Bridge Project were incomplete because each project failed to take into account the environmental impacts of the other. *See id.* at 193. As a remedy, Citizens requested that the court require the defendants to prepare another "[EIS] for all of the County J/Highway 164 project," as well as "enjoin[] the defendants from widening County J/Highway 164 . . . from two lanes to four lanes." *Id.* at 193-94.[9]

On June 12, 2003, the district court denied Citizens' motion for a preliminary injunction and then ruled against

---

[8] Segmentation is a procedure that "allows an agency to avoid the NEPA requirement that an EIS be prepared for all major federal actions with significant environmental impacts by segmenting an overall plan into smaller parts involving action with less significant environmental effects." *City of West Chicago v. United States Nuclear Regulatory Comm'n,* 701 F.2d 632, 650 (7th Cir. 1983).

[9] Citizens also requested that the court enjoin the reconstruction and realignment of Lovers Lane Road, which is considered part of the Ackerville Bridge Project. Lovers Lane is the name of the northern-most portion of Highway 164, after it crosses the trackage of the Wisconsin Central Limited and the Wisconsin Southern Railroads.

Citizens on the merits. In pertinent part, the district court determined that the defendants' environmental analysis was thorough and sufficient, as was their consideration of feasible alternatives. The district court further found that the defendants had made a "reasonable decision in establishing the project termini" and that the Ackerville Project had not been segmented improperly from the Highway 164 Project. *Id.* at 179.

Citizens appealed. We affirmed the judgment of the district court. *See Citizens I*, 349 F.3d 938. We agreed with the district court that the defendants' environmental analysis and consideration of alternatives were sufficient. *See id.* at 952-62. We also affirmed the district court's holding on the segmentation issue:

> In the [EA and Finding of No Significant Impact], the defendants explicitly considered the three criteria for segmentation set out in 23 C.F.R. § 771.111, and gave a reasoned justification of how their segmentation fit each factor. As to logical termini, the defendants explained that "[s]ince the need to bridge the train tracks is the driving force behind this project," the south termini for the Project was established just beyond the bridge touchdown point.
>
> . . .
>
> The second factor, independent utility, is the most important factor in highway cases such as this. . . . With respect to this factor, the [EA and Finding of No Significant Impact] pointed out that neither the bridge construction project, with its safety focus, or the County J/Highway 164 Project, with its expansion focus, require the construction of any other projects to be usable.

Finally, as to the third factor, restriction of alternatives, the Ackerville Bridge Project contemplates, rather than restricts, future roadway projects, including the possibility of a four-lane project if found to be needed. Indeed, making space for future expansion was a "secondary purpose" for the Project in the first place.

In sum, the defendants analyzed the relevant factors set out in 23 C.F.R. § 771.111(f)(1)-(3), and came to a reasoned conclusion. There is also no real evidence to support pretextual motive. Accordingly, we hold there was no improper segmentation in this case.

*Id.* at 963 (internal citations omitted).

## C. The Present Litigation

On February 22, 2005, Citizens, together with WEAL, a Wisconsin non-profit corporation also dedicated to protecting Waukesha County's natural resources, filed the present lawsuit. They alleged that the DOT, FHWA and WisDOT's final approval of the Highway 164 Project and the Army Corps' issuance of a Clean Water Act § 404 permit violates the APA, 5 U.S.C. § 500 et seq., the CWA, 33 U.S.C. § 1344, the FAHA, 23 U.S.C. § 101 et seq. and NEPA, 42 U.S.C. § 4321 et seq.[10]

---

[10] The plaintiffs' complaint contains eight counts. Counts I-V allege violation of the APA and NEPA stemming from the defendants' failure to prepare an Environment Impact Statement that discusses in sufficient detail the environmental effects of the Highway 164 Project; the defendants' reliance on unreliable and inaccurate data with regard to the project's impact on area wetlands; the defendants' failure to consider reasonable alter-
(continued...)

In March 2005, the plaintiffs filed a motion for a temporary restraining order ("TRO") and a preliminary injunction, requesting that the court enjoin the defendants from "proceeding with any further property acquisition, demolition, grading, construction or any other physical work on the highway 164 expansion project north of Swan Road in Waukesha County." R.8 at 2-3.

On March 21, 2005, the district court[11] denied the plaintiffs' request for a TRO. It held that the plaintiffs had not proven that they would suffer "irreparable injury before [their] adversary [could] be heard." R.13 at 2. According

---

[10] (...continued)

natives to expanding Highway 164, namely the improvement of the existing two-lane highway; the defendants' failure to respond adequately to public comments; and the defendants' failure to prepare a Supplemental Environmental Impact Statement when new information, indicating that the expansion of the highway would have a significantly greater impact on the surrounding environment than previously believed, became available. Counts VI and VII allege violation of the FAHA and its implementing regulations because the defendants did not fully consider the adverse effects of air pollution prior to approving the new highway project; adopt appropriate measures to minimize those hazardous effects; or hold hearings at which the public could "hear and be heard." R.1 at 31. Count VIII alleges that the Army Corps of Engineers violated the CWA in granting other defendants a § 404 permit, allowing the WisDOT and FHWA to fill in approximately nine acres of wetlands in connection with the project; the plaintiffs claim that there exist practicable alternatives to destroying the wetlands, which would have a less destructive impact on the environment.

[11] This order was issued by the district judge initially assigned to the case. Subsequently, this judge recused himself and the case was reassigned.

to the court, construction on Phase II of the project was not scheduled to begin until April 2005, and the defendants could be heard within that time frame. The court directed expedited proceedings on the plaintiffs' motion for a preliminary injunction.

On April 27, 2005, the district court denied the plaintiffs' motion for a preliminary injunction. *See* R.46. It held that the plaintiffs had not established a "reasonable likelihood of success on the merits of [their] claims." *Id.* at 11. In pertinent part, the court held that the plaintiffs' current challenges to the Highway 164 Project were barred by claim preclusion because *Citizens I*: (a) culminated in a final decision on the merits, *see id.* at 13 n.14; (b) involved the same parties as the present action, or their privies, *see id.* at 14-16; and (c) involved the same cause of action as the present litigation, *see id.* at 17-24. Concerning the last element, the court held that *Citizens I*, although focused on the Ackerville Bridge Project and the alleged errors in the EA prepared for that project, also challenged the EIS prepared for the widening of Highway 164, the same document that forms the basis of the plaintiffs' present claims. Specifically:

> [The] plaintiffs argue that they did not challenge the March 6, 2002 ROD in *Citizens I. . . .* However, although Citizens never mentioned the March 6, 2002 ROD in *Citizens I*, it is clear that it challenged that decision in that case when it argued that the County J/Highway 164 project was improperly segmented from the Ackerville Bridge project. A claim that one project was improperly segmented from another is necessarily a claim that the environmental review conducted for *each* project was inadequate because each review failed to consider the environmental effects of the other project.

*Id.* at 19-20 (emphasis in original).

In addition, the court held that the relief requested by the plaintiffs in *Citizens I* demonstrated that there was an identity between the cause of action in that litigation and the cause of action in the present suit. *See id.* at 20 ("Indeed, Citizens must have recognized that success on their segmentation claim in *Citizens I* entailed the invalidation of the ROD which approved the County J/Highway 164 project because, in that case, Citizens sought to enjoin the County J/Highway 164 project and compel FHWA and WisDOT to prepare an EIS governing both projects."). The court concluded that, although the legal theories relied upon by the plaintiffs in the present litigation are not the same as those relied upon in *Citizens I*, there exists an identity of issues between them because both cases arise from the "same transaction" and involve "the same, or nearly the same[,] factual allegations." *Id.* at 22 (internal quotation marks omitted).

The plaintiffs timely filed a notice of appeal, as well as a motion for an injunction pending appeal. *See* Fed. R. Civ. P. 62(c). The district court denied this motion, determining that, because the plaintiffs had not demonstrated a likelihood of prevailing on the merits of their claims, an injunction pending appeal was not warranted. *See* R.61.

## II

## DISCUSSION

We review de novo a district court's denial of a motion for a preliminary injunction on res judicata grounds.[12]

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). If these requirements are fulfilled, res judicata "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). "Simply put, the doctrine of *res judicata* provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (internal quotation marks omitted).

The plaintiffs do not contest that *Citizens I* resulted in a final judgment. Nor do they dispute that, although WEAL

---

[12] *See Matter of L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993) (holding that, although factual determinations made in the course of evaluating a motion for a preliminary injunction are reviewed for clear error, "legal conclusions are subject to *de novo* review").

was not a named plaintiff in the prior litigation, WEAL and Citizens are in privity. However, they do challenge whether the present cause of action is the same as, or has an "identity" with, the cause of action raised by Citizens in *Citizens I*. A claim has "identity with a previously litigated matter if it emerges from the same core of operative facts as that earlier action." *Brzostowski*, 49 F.3d at 338-39 (internal quotation marks omitted). The district court, the plaintiffs submit, mischaracterized their contentions in *Citizens I*. According to the plaintiffs, the *Citizens I* litigation focused exclusively on the lawfulness of the Ackerville Bridge Project and simply did not "challenge the Highway 164 Project[]." *See* Reply Br. at 4-5 (citing the numerous "differentiating facts between the projects").

We agree with the plaintiffs that the Ackerville Bridge and Highway 164 Projects are factually distinct.[13] *See Citizens I*, 349 F.3d at 962-63. We nevertheless must conclude that *Citizens I* challenged the validity of *both* projects and therefore the plaintiffs cannot relitigate claims arising out of either project. Specifically, in *Citizens I*, Citizens raised the

---

[13] Although unnecessary to our decision today, we note the post hoc nature of the plaintiffs' position. Throughout the *Citizens I* proceedings, the plaintiffs maintained that the two projects were, in fact, intricately interlinked. Indeed, it is this claim that we addressed in Citizens' prior appeal. *See Highway J Citizens Group v. Mineta*, 349 F.3d 938, 962-63 (7th Cir. 2003) (holding that the two projects had been properly segmented).

There is no need to address the implications of this contradiction in Citizens' position today. As we explain in the text, although we agree with the plaintiffs that the projects are independent, we nevertheless hold that the plaintiffs' current challenges to the Highway 164 Project should have been raised in *Citizens I*.

following contentions: (1) that the Finding of No Significant Impact for the Ackerville Bridge Project failed to account for the environmental impacts of the contamination plume; (2) that the defendants had failed to consider "reasonably feasible alternatives to the building of the proposed bridge," *Citizens I* Complaint, Supp. App. at 190; and (3) that the Highway 164 and Ackerville Bridge Projects had been segmented improperly. With regard to the last contention, Citizens alleged that, by treating the Ackerville Bridge Project as a separate endeavor, the defendants were able to avoid "address[ing] the environmental issues raised by the presence of the contaminate plume" in drafting the Highway 164 EIS.[14] *Id.* at 193. As a result, Citizens continued, the Highway 164 EIS was incomplete and inaccurate.

Notably, this previous contention arose from the same document that forms the factual basis of the plaintiffs' current claims. In addition, the relief requested in the present action is similar in substantial ways to the relief requested in *Citizens I*—a consideration that our cases counsel ought to be given significant weight in determining whether there is an identity between the plaintiffs'

---

[14] The plaintiffs contend that these allegations are immaterial because, in *Citizens I*, Citizens did not explicitly challenge the Record of Decision ("ROD") for the Highway 164 Project; rather, according to the plaintiffs, the references in the *Citizens I* complaint to Highway 164 were limited to the EIS. A ROD, however, marks the final approval of the recommendations contained in an EIS. Because any error in the EIS thus becomes an error in the ROD, the documents are inseparable for the purpose of res judicata analysis.

causes of action for res judicata purposes.[15] In *Citizens I*, Citizens requested that the court "requir[e] the defendants to prepare a Final Environmental Impact Study for all of the County J/Highway 164 project" and "[p]reliminarily and permanently enjoin[] the defendants from widening County J/Highway 164." *Citizens I* Complaint, Supp. App. at 193-94. Similarly, in this litigation, the plaintiffs request that the court "prohibit[] Defendants USDOT and FHWA from taking any other action that in any way supports or funds the design, property acquisition, construction or development of the [Highway 164 expansion] project until Defendants have remedied their violations of NEPA, the APA, and federal highway law," as well as require the defendants to prepare a supplemental EIS for the Highway 164 Project. R.1 at 35 (also requesting that the FHWA vacate the original EIS and ROD for the Highway 164 Project). Accordingly, we must conclude that, in the course of arguing that the two projects had been improperly segmented, Citizens placed into dispute the validity of the environmental assessment for the Highway 164 Project.

In our consideration of this matter, we note Citizens' view that the mere mention of Highway 164 in the complaint

---

[15] *See Anchor Glass Container v. Buschmeier*, 426 F.3d 872, 878 (7th Cir. 2005) (holding that, because the "ultimate relief sought in the two actions" is the same, "there is sufficient identity of the causes of action [in the current and past litigations] for res judicata to apply"); *see also Friez v. First Am. & Trust of Minot*, 324 F.3d 580, 581 (8th Cir. 2003) (deeming relevant to its res judicata analysis that the plaintiff "seeks effectively the same relief (ERISA benefits) in both cases"); *United Tech. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1345 (Fed. Cir. 1999) (holding that the two suits involved identical causes of action, in part because the "relief sought by Chromalloy in both actions is intertwined").

does not mean that Citizens necessarily challenged the overall validity of the environmental assessment of that project. They submit that, in contending that the relevant agencies improperly segmented the two projects, they focused primarily, or even exclusively, on errors in assessing the environmental effects of the Ackerville Bridge Project, referencing Highway 164 only out of necessity. We cannot accept this argument, however. Citizens' attempt to minimize the significance it placed on the Highway 164 Project in *Citizens I* is unavailing. According to the plain text of the documents filed in *Citizens I*, Citizens submitted that segmentation was improper because it caused the Highway 164 EIS, *not* the Ackerville Bridge EA, to be underinclusive and therefore inaccurate. The thrust of Citizens' submission was that the improper segmentation permitted the FHWA and WisDOT to prepare the Highway 164 EIS without first examining or accounting for contamination issues near the Ackerville bridges. *See Citizens I* Complaint, Supp. App. at 193-94 (alleging that the "reason that the defendants have segmented the bridge project . . . is so that the EIS for the project 2748-01-01 [the Highway 164 Project] . . . would not have to address the environmental issues raised by the presence of the contaminate plume" and that, as a result, a new "Final Environmental Impact Study for all of the County J/Highway 164 project" is necessary). It is clear from these documents that, in *Citizens I*, Citizens challenged the procedures followed in preparing the environmental analysis for the Highway 164 expansion and, thus, there is an identity between the cause of action in *Citizens I* and the cause of action in the present case.

To be sure, the plaintiffs in the present litigation do not pursue the precise legal theories that we addressed in *Citizens I*. In the prior litigation, Citizens' only argument

with regard to the Highway 164 Project was that the defendants' failure to take into account the environmental effects of the contamination plume near the Ackerville bridges rendered the EIS on that project invalid. By contrast, in the present litigation, the plaintiffs claim that the Highway 164 EIS is inaccurate, fails to consider the cumulative environmental effects of the construction or reasonable alternatives to highway expansion, and suffers from the lack of a meaningful opportunity for public commentary. They also allege a violation of the FAHA on the ground that the defendants failed to consider, and attempt to remedy, hazardous air pollution stemming from the proposed construction.

However, the question is not whether the legal issues now presented were raised previously; rather, it is whether these matters "*could have been raised* in [the prior] action." *Brzostowski*, 49 F.3d at 338 (emphasis added). To determine "whether the plaintiff could have raised the [current] issue[s] in the first suit," we employ a "same transaction" test. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993). Under this test,

> a cause of action consists of a single core of operative facts giving rise to a remedy. . . . Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory.

*Id.* (internal citations and quotation marks omitted).

Here, although the legal elements of each claim may be different, the underlying factual transaction is identical: the

preparation and finalization of the Highway 164 EIS.[16] As in *Brzostowski*, the resolution of both of the plaintiffs' complaints are grounded in the adequacy of the environmental analysis for the Highway 164 Project. *See Brzostowski*, 49 F.3d at 339 ("[W]e find that the two claims before us clearly arise out of the same core of operative facts and are based on the same factual allegations. While the legal elements of each claim may be different, the central factual issues are identical."). Notably, Citizens has not argued that they were not *able* to bring their present claims in the earlier litigation. Nor could such an argument have been made. All transactions forming the basis of the plaintiffs' causes of action, including the final approval of the Highway 164 EIS by the FHWA and DOT, had occurred by the time *Citizens I* was filed on July 3, 2002: The Highway 164 EIS was drafted and disclosed to the public in April 2001; the ROD for the project was issued on March 6, 2002.

In sum, because the plaintiffs challenged the approval of the Highway 164 Project in *Citizens I*, because the current claims stem from the same factual transaction as the legal claims addressed in that prior litigation and because

---

[16] We take no position on whether the plaintiffs' CWA claim against the Army Corps, who was not a party to the *Citizens I* litigation, is also barred by res judicata. The district court concluded that the plaintiffs had not demonstrated a reasonable likelihood of success on their CWA claim, given that there is no evidence that the Corps, in issuing to the WisDOT a § 404 permit, had failed to consider "practicable alternatives" to the expansion of the highway or that the Corps understated the wetlands impact of the project. R.46 at 24-32. The plaintiffs do not challenge these conclusions on appeal. Therefore, this appeal does not implicate the Supreme Court's recent decision in *Rapanos v. United States*, 126 S. Ct. 2208 (2006).

the plaintiffs had a fair opportunity to raise their claims previously, we must conclude that res judicata bars the plaintiffs from further pursuing their challenges to the Highway 164 Project. As the Supreme Court noted emphatically in *Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 525 (1931), "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered settled as between the parties."

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*