PEREGRINE FINANCIAL GROUP, INC., Plaintiff-Appellant, v.
TRADEMAVEN, L.L.C., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—08—1111

Opinion filed May 6, 2009.

Bellows & Bellows, P.C., of Chicago (Joel J. Bellows and Christopher L.
Gallinari, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, LLP, of Chicago (Brian W. Lewis, Denise
A. Lazar, and E. Timothy Walker, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

In a prior action in the United States District Court for the
Northern District of Illinois, the plaintiff, Peregrine Financial Group

(Peregrine), and defendant TradeMaven, L.L.C. (TradeMaven), were named as defendants by Trading Technologies, Inc. (Trading Technologies), in a patent infringement lawsuit (patent litigation).[1] That suit was resolved when Peregrine and TradeMaven entered into separate settlement agreements with Trading Technologies, and all three parties agreed to a consent judgment, which was entered by the district court.

Peregrine then filed suit in the circuit court of Cook County against TradeMaven and two of its principals, Jeffrey Ganis and Douglas Zalesky, alleging breach of contract, breach of warranty, indemnification, and tortious interference with prospective business advantage. The circuit court granted TradeMaven's motion for partial summary judgment on the indemnification claim, based on its affirmative defense of *res judicata*. Peregrine filed a motion for reconsideration, which was denied, and Peregrine now appeals. For the reasons set forth below, we affirm the judgment of the circuit court.

## I. BACKGROUND

On or about October 27, 2004, Peregrine, a commodities brokerage firm, and TradeMaven, a company that develops and licenses electronic trading software, entered into a "TradeMaven Licensing Agreement" (licensing agreement) that granted Peregrine a license to use TradeMaven's software. Pursuant to section 8(a) of the licensing agreement, TradeMaven warranted that the licensed software "contains no material that violates the rights of any third party or that gives rise to any claim of such violation, including, without limitation *** claims of infringement of any trademark, service mark, trade names, copyrights or other proprietary right." In section 10(b) of the agreement, TradeMaven agreed to indemnify Peregrine and hold it harmless from any claims for "expenses and costs (including any reasonable legal fees and expenses related to [Peregrine's] defense) arising from any claim of infringement of any trademark, service mark, trade name, copyright, or other proprietary right."

On or about July 19, 2005, Trading Technologies filed suit against Peregrine and TradeMaven in the United States District Court for the Northern District of Illinois alleging that the software licensed by TradeMaven to Peregrine infringed on Trading Technologies' proprietary patent rights. Peregrine contends that both before and during the patent litigation it sought and received assurances from Jeremy Short, a TradeMaven officer, that TradeMaven would indemnify Peregrine against the costs and defenses of the patent litiga-

---

[1]Trading Technologies, Inc. v. Peregrine Financial Inc., case No. 05—C—4137.

tion, including attorney fees. Peregrine did not, however, file any claims in the patent litigation against TradeMaven for indemnification or otherwise.

On January 30, 2006, TradeMaven entered into a settlement agreement with Trading Technologies, pursuant to which TradeMaven admitted infringement and agreed to pay Trading Technologies $200,000. Peregrine was not a party to this settlement agreement. On February 3, 2006, one of Peregrine's attorneys sent a letter to TradeMaven's counsel expressing disappointment with the terms of the settlement agreement and reminding TradeMaven of its contractual duty to indemnify Peregrine, stating "TradeMaven is obligated to indemnify PFG for any claims against it for infringement. These obligations are continuing."

On March 15, 2006, Peregrine also entered into a settlement agreement with Trading Technologies. TradeMaven was not a party to that agreement, but that same day, TradeMaven amended its own settlement agreement with Trading Technologies. There is a disagreement between the parties as to the terms of TradeMaven's amended settlement agreement. TradeMaven contends it agreed to pay Trading Technologies an additional $50,000 in exchange for Trading Technologies executing a general release in Peregrine's favor. Peregrine, however, asserts that it did not ask TradeMaven to make an additional payment to Trading Technologies, that any additional payment was not to discharge any obligation Peregrine had, nor did it extinguish TradeMaven's obligation to indemnify Peregrine.

In conjunction with the two settlement agreements, Peregrine, TradeMaven and Trading Technologies agreed to a consent judgment, which was entered by the federal district court on March 23, 2006. Of significance to this case is the final paragraph of the consent judgment, which states that "Each party shall bear its own costs and attorneys' fees."

Two months later, on May 23, 2006, Peregrine's counsel again sent a letter to TradeMaven's counsel regarding TradeMaven's contractual obligation to indemnify Peregrine. That letter stated, in part, "Now that the litigation between PFG and TT has been successfully resolved (from PFG's standpoint) it is time to address the matter of TradeMaven's indemnification. PFG's expenses of that litigation are $416,081.22."

TradeMaven did not indemnify Peregrine, and on September 22, 2006, Peregrine filed a four-count complaint against TradeMaven in the circuit court of Cook County to recover damages for breach of warranty, indemnification, breach of contract and tortious interference with prospective business advantage. In its indemnification claim, Per-

egrine seeks to recover the $416,081.22 in attorney fees and costs it incurred in the patent litigation with Trading Technologies. After the circuit court granted TradeMaven's motion to dismiss the breach of warranty claim, TradeMaven filed its verified answer to the remaining counts and asserted affirmative defenses of *res judicata* and collateral estoppel with regard to Peregrine's indemnification claim. Trade-Maven subsequently filed a motion for partial summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 2006)), asserting that Peregrine's indemnification claim was precluded by the doctrine of *res judicata* and by collateral estoppel because the parties had agreed in the consent judgment that each party would bear its own costs and attorney fees.

After a hearing on the motion, the circuit court issued an order stating that TradeMaven was not entitled to summary judgment on collateral estoppel grounds because a "consent judgment is not entitled to collateral estoppel effect." *Arnett v. Environmental Science & Engineering, Inc.*, 275 Ill. App. 3d 938, 944 (1995). However, the court stated that TradeMaven was entitled to summary judgment on *res judicata* grounds because the elements of *res judicata* were met in that there was (1) an identity of parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Cole v. Board of Trustees of the University of Illinois*, 497 F.3d 770, 772 (7th Cir. 2007). Peregrine filed a motion to reconsider, which the circuit court denied. This appeal followed.

## II. ANALYSIS

Appellate review of an order granting partial summary judgment is *de novo. Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). "If the court determines that there is no genuine issue of material fact as to one or more of the major issues in the case, but that substantial controversy exists with respect to other major issues, *** the court shall thereupon draw an order specifying the major issue or issues that appear without substantial controversy, and directing such further proceedings upon the remaining undetermined issue as are just." 735 ILCS 5/2—1005(d) (West 2006).

In deciding a summary judgment motion, the court must construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. *Ad-*

*ams*, 211 Ill. 2d at 43. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162-63 (2007). Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt. *Bagent*, 224 Ill. 2d at 163.

When the moving party is a defendant, as in this case, the materials need only establish the defendant's factual position on the affirmative defense raised. *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 387 (1990). Once the movant has carried that burden, the respondent may not rely on the factual issues raised by the pleadings, but must submit affidavits or refer to depositions or admissions on file that present a contrary version of the facts. *Winnetka Bank*, 202 Ill. App. 3d at 387. While parties opposing a summary judgment motion are not required to prove their case, they are under a duty to present a factual basis that would arguably entitle them to judgment in their favor, based on the applicable law. *Winnetka Bank*, 202 Ill. App. 3d at 387-88. With this in mind, we consider whether the trial court acted properly in granting the defendant's summary judgment motion on *res judicata* grounds.

Peregrine first asserts that TradeMaven failed to meet its burden of proof regarding all requisite elements of its affirmative defense of *res judicata*. The parties agree that, as the circuit court held, federal law governs the *res judicata* issue because the litigation with Trading Technologies was filed and settled in federal court. *Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Group v. United States Department of Transportation*, 456 F.3d 734, 741 (7th Cir. 2006), quoting *Allen v. McCurry*, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 313, 101 S. Ct. 411, 414 (1980). As with Illinois law, under federal law there are three requirements for *res judicata*: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Cole*, 497 F.3d at 772.

In this case, the parties agree that there is an identity of parties between the patent litigation and this case and that the consent judgment was a final judgment for *res judicata* purposes. *Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1083-84 (7th Cir. 1979); *Arnett*, 275 Ill. App. 3d at 944 ("A consent judgment is entitled to *res*

*judicata* effect, thereby barring relitigation between the same parties or their privies for the same cause of action"). The issue raised in this appeal then is whether the circuit court correctly concluded that there was an "identity of causes of action" for *res judicata* purposes.

Peregrine first contends that the circuit court erred in determining that there was an identity of causes of action by looking at whether Peregrine "could have brought" its claim for indemnification against TradeMaven in the patent litigation. Peregrine specifically points to the wording of the circuit court order wherein the trial judge stated as follows:

> "For *res judicata* purposes, an identity of causes of action exists 'if the claim emerges from the same core of operative facts as the earlier action. Two claims are fro [*sic*] purposes of *res judicata* if they are based on the same or nearly the same, factual allegations.' *Cole*, 497 F.3d at 773-73."

And:

> "Plaintiffs contend that they filed no cause of action for indemnification in the prior suit. Thus Plaintiff's cause of action is not identical. However, Plaintiff's [*sic*] could have asserted its claim in the prior action. Thus the Court will grant Defendant's motion."

Peregrine asserts that whether it could have brought its claim for indemnification in the patent litigation is a distinct inquiry from whether there was an identity of causes of action for *res judicata* purposes. According to Peregrine, the "were or could have brought" principle is not used to determine whether *res judicata* exists but rather to determine the extent to which *res judicata* is to be applied once its elements have been established.

While the language of the circuit court's order may be less than clear, we will be reviewing the issue *de novo* to determine if the court erred in concluding that there was an identity of causes of action between the patent litigation and this case. For purposes of *res judicata*, there is an identity of causes of action if two claims are based on the same, or nearly the same, factual allegations. *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 226 (7th Cir. 1993). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). "Whether all of the facts of one particular claim are relevant to another claim is not a fact considered when determining whether a later-brought claim is barred by res judicata." *Cole*, 497 F.3d at 774. Rather, " 'a claim has identity with a previously litigated matter if it emerges from the same core of operative facts as the earlier action.' "

*Cole*, 497 F.3d at 774, quoting *Highway J Citizens Group*, 456 F.3d at 741.

Peregrine contends that TradeMaven made no showing that the patent litigation and this case are based on the same or nearly the same factual allegations. Peregrine asserts that because the patent litigation involved allegations of patent infringement while this case involves a contractual obligation to indemnify, there is no identity of causes of action. However, the patent litigation and the indemnification claim both arose out of the licensing agreement between Peregrine and TradeMaven. Pursuant to that agreement, Peregrine acquired the rights to use TradeMaven software, which resulted in the federal patent infringement claim by Trading Technology. It was also pursuant to that agreement that TradeMaven agreed to indemnify Peregrine for any such claims. Since that agreement was the basis of Peregrine's liability to Trading Technologies and the basis for its claim for indemnity from TradeMaven, both cases arise out of the same transaction, circumstances, or other factual nebula as the prior suit.

Peregrine also contends that because it brought no claims in the patent litigation against TradeMaven arising out of TradeMaven's contractual obligation to indemnify Peregrine or otherwise, there was no identity of causes of action between the patent litigation and this case. Peregrine cites *Colonial Penn Life Insurance Co. v. Hallmark Insurance Administrators, Inc.*, 31 F.3d 445 (7th Cir. 1994), to support that argument. In *Colonial Penn*, Hallmark sued Colonial Penn for breach of contract after Colonial Penn backed out of an agreement to issue and underwrite a new type of insurance policy that Hallmark would administer. A jury returned a $2.5 million verdict in Hallmark's favor. In the meantime, Hallmark defaulted on a $1.5 million bank loan that was guaranteed by Colonial Penn. Colonial Penn made good on the loan then sued Hallmark for reimbursement. The district court entered summary judgment in favor of Colonial Penn for the amount of the loan plus fees and interest. On appeal, Hallmark contended that Colonial Penn's action was barred by *res judicata*. The court of appeals disagreed, holding that the two claims did not arise out of the same factual allegations because Colonial Penn did not allege in the first case that Hallmark defaulted on the loan or that Colonial Penn paid on the guaranty. *Colonial Penn*, 31 F.3d at 447.

Peregrine asserts that, as in *Colonial Penn*, because it did not seek indemnification from TradeMaven in the patent litigation, there is no identity of causes of action. However, *Colonial Penn* can be distinguished from this case. In *Colonial Penn*, while the breach of contract case was pending, Hallmark had not yet defaulted on the loan and

Colonial Penn had not yet paid on the guarantee. Therefore, Colonial Penn could not have brought a claim against Hallmark seeking reimbursement. In this case, the licensing agreement between Peregrine and TradeMaven was part of the patent infringement case and so necessarily was the indemnification provision of that agreement. It is clear that Peregrine was aware of its right to seek indemnification since, as its brief states, "both before and during the pendency of the Patent Litigation, PFG sought assurances from TradeMaven, that it would indemnify PFG against the costs and defenses of the patent litigation, including its attorney fees." In addition, during the patent litigation and at the time the parties agreed to the consent judgment, Peregrine had already incurred costs and attorney fees, for which it could have sought indemnification from TradeMaven. Therefore, unlike the reimbursement claim in *Colonial Penn*, which did not arise until after a judgment had been entered, Peregrine's claim for indemnification could have been raised in the patent litigation.

During oral argument, Peregrine contended that even if it could bring its claim for indemnification in the patent litigation, it was not required to do so because its cause of action had not yet accrued. Peregrine was granted leave to submit supplemental authority to support this argument. First, Peregrine cites *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391 (2001), wherein our supreme court held that a third-party claim for indemnification does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. The court stated that, " 'Under Illinois law, a defendant is entitled to bring an implied contract of indemnity action *** before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract for indemnity does not accrue until the defendant had a judgment entered against him or until he settles the claim against him.' " *Guzman*, 196 Ill. 2d at 399-400, quoting *Anixter Brothers, Inc. v. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953 (1984).

Relying on *Guzman*, Peregrine contends that its claim for indemnification did not accrue until after the patent infringement lawsuit concluded and TradeMaven rejected Peregrine's written demand for indemnification. However, *Guzman* is distinguishable from the case before us. First, in *Guzman* our supreme court relied on Illinois law, while, as noted above, federal law applies to the *res judicata* issue in this case. Secondly, *Guzman* involved a third-party complaint and an "implied contract of indemnity." In this case, there was no third-party action, as TradeMaven and Peregrine were both named as

defendants in the underlying patent litigation, and TradeMaven and Peregrine had an express not an implied contract of indemnity. Therefore, *Guzman* does not apply to the facts before us.

Peregrine also cites *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461 (2008), to assert that the reasoning of *Guzman* extends to express indemnity agreements. In *Travelers*, Travelers sued A.G. Carlson, a metalworking firm, to recover $510,904.52 it incurred in losses, costs and expenses on claims against performance bonds issued to Carlson after Carlson breached underlying contracts to perform work at a county jail, a federal prison and a college building. Travelers also sued James Bowman, Carlson's president, and Barbara Bowman, its sole shareholder, for breach of the indemnity agreements they had signed. Carlson was subsequently dismissed with prejudice, and the Bowmans moved to dismiss pursuant to section 2—619(a)(5) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 2006)), arguing that Travelers' claim was barred by the four-year statute of limitations in section 13—214(a) of the Code (735 ILCS 5/13—214(a) (West 2006)), applicable to construction improvements to real property. Travelers, however, contended that the 10-year statute of limitations in section 13—206 (735 ILCS 5/13—206(a) (West 2006)), applicable to written contracts, should apply.

Our supreme court ruled in favor of Travelers, stating that the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises determines what limitations period applies. *Travelers*, 229 Ill. 2d at 466-67, citing *Armstrong v. Guigler*, 174 Ill. 2d 281, 286 (1996). Because Travelers' complaint alleged that the Bowmans failed to perform their obligation under the written indemnification agreement, the court found that the 10-year statute of limitations for breach of contract applied. *Travelers*, 229 Ill. 2d at 467. The court further stated, "[a] cause of action to enforce the indemnity agreement, therefore, was required to be commenced within 10 years after the Bowmans failed or refused to tender payment upon Travelers' demand." *Travelers*, 229 Ill. 2d at 477.

Peregrine contends that pursuant to the holding in *Travelers*, its claim against TradeMaven did not accrue until the patent infringement lawsuit was concluded and TradeMaven rejected Peregrine's written demand for indemnification dated May 23, 2006. However, the indemnity agreement at issue in *Travelers* differed from the indemnity agreement in the case before us in that it provided that "Payments of amounts due Surety hereunder together with legal interest shall be payable *on demand*." (Emphasis added.) *Travelers*, 229 Ill. 2d at 468. Therefore, pursuant to that express term, Travelers' cause of action could not accrue until the Bowmans failed or refused to pay upon

Travelers' demand for payment. Conversely, the indemnity agreement between TradeMaven and Peregrine contains no language providing that TradeMaven's duty to indemnify would be triggered by Peregrine's demand for payment. *Travelers* is distinguishable on this basis.

Peregrine next asserts that under federal law, judgments entered on principal claims for liability do not preclude subsequent actions for indemnity and cites *Curtis v. A. Garcia y Cia, Ltda.*, 272 F.2d 235 (3d Cir. 1959), for support. *Curtis* was a third-party action by a defendant shipowner seeking indemnity from a stevedoring company after the shipowner was found liable for injuries suffered by longshoremen employees of the stevedoring company. Peregrine contends that the *Curtis* court's finding that the indemnity claim was not barred by *res judicata* supports its argument that a judgment does not preclude a subsequent action for indemnity.

However, the facts in *Curtis* differ from the facts in the case before us. In *Curtis*, at trial on the principal claim, the jury found that the shipowner's negligence was the cause of the accident. The jury also found that there was some negligence on the part of the stevedoring company but did not specify the nature of that negligence. In seeking indemnity, the shipowner sought to prove that the stevedoring company's negligence was the direct cause of the accident. The court of appeals held that the failure of the jury to specify what conduct by the stevedoring company constituted negligence prevented the judgment from providing any proper basis for a claim that the issue as to the nature of the company's negligence was *res judicata*. *Curtis*, 272 F.2d at 238. In this case, however, there are no unresolved underlying issues regarding the liability of a nonparty to the prior litigation, because those issues were resolved in the patent litigation pursuant to the settlement agreements and consent judgment.

A case that is more closely aligned with the instant case is *Threshermen's Mutual Insurance Co. v. Wallingford Mutual Insurance Co.*, 26 F.3d 776 (7th Cir. 1994). In *Threshermen's*, a plaintiff, who was injured when a lawn chair he was sitting in collapsed, brought a products liability suit in state court against the chair manufacturer, its primary liability carrier, the chair's distributor and its excess liability insurer. A stipulated judgment was entered in that case, and all claims were dismissed against the defendants. The distributor's excess carrier then brought a case in federal court seeking indemnification from the chair manufacturer's insurance company, alleging breach of the vendor's endorsement in the primary insurance policy, which occurred while the products liability action was pending.

Applying Wisconsin law, the court of appeals held that the plaintiff's claim for indemnification was barred by *res judicata* because "the alleged breach of the vendor's endorsement occurred during the pendency of the [state court] action, and as the record makes clear, Threshermen's contentions could have been raised in that case." *Threshermen's*, 26 F.3d at 782. The court noted that the record showed that while the state case was pending, Threshermen's wrote letters to the primary liability carrier reminding it of its responsibility to Threshermen's insureds. *Threshermen's*, 26 F.3d at 782 n.9. The court added that "[a]ll of Threshermen's claims were derived from the settlement negotiations and court-approved agreement" and "[c]learly Threshermen's could have litigated its grievances in the first proceeding." *Threshermen's*, 26 F.3d at 783.

Similarly, in this case, Peregrine's claims for attorney fees and costs derived from its litigation and settlement agreement with Trading Technologies and the court-approved consent judgment the parties agreed to. And it is clear from the letters that Peregrine's counsel sent to TradeMaven's counsel that Peregrine was aware of its indemnification claims and could have brought those claims in that proceeding.

At oral argument, Peregrine's counsel asserted that equity should prevent application of *res judicata* in this case because TradeMaven should not be permitted to avoid its contractual obligation to indemnify Peregrine, particularly since it gave assurances during the litigation that it would do so. While this court may be sympathetic to such an argument, we note, as the Seventh Circuit Court of Appeals did in *La Preferida, Inc. v. Cerveceria Modelo, S.A., de C.V.*, 914 F.2d 900 (7th Cir. 1990), that " '[t]he predicament in which [the plaintiff] finds [itself] is of [its] own making.... [W]e cannot be expected, for [its] sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy.' " *La Preferida, Inc.*, 914 F.2d at 908, quoting *Reed v. Allen*, 286 U.S. 191, 198-99, 76 L. Ed. 1054, 1056-57, 52 S. Ct. 532, 533 (1932).

Therefore, because Peregrine's claim for indemnification arises out of "the same incident, events, transaction, circumstances, or other factual nebula" as the patent litigation, we find that there was an "identity of causes of action" between the two cases, and because the indemnification claim could have been raised in the patent litigation, we find that the trial court did not err in granting summary judgment on the defendant's affirmative defense of *res judicata*.

Peregrine also contends that TradeMaven failed to show that it was entitled to summary judgment based on its affirmative defense of

collateral estoppel. However, because we find that the circuit court did not err in granting summary judgment based on *res judicata*, we do not reach the issue of whether the defendant is entitled to summary judgment on that defense.

Lastly, Peregrine asserts that the circuit court erred in denying its motion for reconsideration. The decision of whether to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001). The purpose of a motion to reconsider is to bring the court's attention to (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of the existing law. *O'Connor v. County of Cook*, 337 Ill. App. 3d 902, 910 (2003).

Peregrine's motion was based on its assertion that the trial court incorrectly applied existing law by granting the summary judgment motion on the grounds that the claim for indemnification could have been brought in the patent litigation. The plaintiff contends this is error because whether a claim "could have been brought" is not dispositive of the *res judicata* question. However, as addressed above, the trial court did not err in granting summary judgment on the basis of TradeMaven's affirmative defense of *res judicata*.

Alternatively, Peregrine asserts that the circuit court abused its discretion by failing to acknowledge its argument that it could not bring a claim for indemnification in the patent litigation because TradeMaven had not yet defaulted on its contractual obligation to indemnify Peregrine. In support of this argument, Peregrine submitted an affidavit of its president and chief operating officer, Russell R. Wasendorf, Jr., asserting that when the patent litigation was commenced, Peregrine did not know whether Trading Technologies' claims against it were limited to Peregrine's use of TradeMaven software, and therefore, Peregrine would not have brought a cross-claim for indemnification at that time. The affidavit also asserted that because Peregrine received assurances from TradeMaven that it would indemnify Peregrine it had no reason to bring a cross-claim.

The trial court was justified in disregarding Wasendorf's affidavit because the information contained therein was available to the plaintiff at the time of the summary judgment motion hearing and, therefore, should have been brought then. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991), citing *Artis v. Fibre Metal Products*, 115 Ill. App. 3d 228, 232 (1983). "Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the

court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.) *Gardner*, 213 Ill. App. 3d at 248-49. Therefore, the trial court did not abuse its discretion in denying Peregrine's motion to reconsider.

## III. CONCLUSION

For the reasons set forth above, we affirm the circuit court of Cook County.

Affirmed.

MURPHY, P.J., and THEIS, J., concur.